**James R. RUSSELL, Jr.,**

v.

**The MONONGAHELA RAILWAY COMPANY, a Corporation, Appellant.**

**No. 12600.**

United States Court of Appeals
Third Circuit.

Argued Oct. 9, 1958.

Decided Dec. 30, 1958.

Samuel W. Pringle, Pittsburgh, Pa. (Pringle, Bredin & Martin, Pittsburgh, Pa., on the brief), for appellant.

Albert D. Brandon, Pittsburgh, Pa. (Frederic G. Weir, Calvin K. Prine, Oliver, Brandon & Shearer, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This is an appeal from a judgment for the plaintiff [1] in a Federal Employer's Liability Act [2] case. Plaintiff was injured by a train operated by defendant at the Arkwright Mine located near Maidsville, West Virginia. He was working as a brakeman on a yard crew performing a blind switching operation,[3] that being the practice generally followed by crews servicing this mine. Plaintiff, after endeavoring to throw a certain switch which did not function properly, attempted to apply the emergency airbrakes. A violent jerk occurred as he was swinging around the corner of the car to get where he could open the angle cock, and his left foot, which was on the end-sill grab iron, slipped causing him to fall from the car. Although he attempted to push himself away from the car as he fell, his left foot was caught between the wheel and the rail, resulting in the injury which is the subject of this action. The verdict was for the plaintiff in the amount of $149,388.[4]

The railroad-defendant, appellant here, urges that the trial court abused its dis-

---

1. The opinion of the district court is reported at D.C.W.D.Pa.1958, 159 F.Supp. 650.

2. 35 Stat. 65, as amended, 53 Stat. 1404, 45 U.S.C.A. § 51.

3. The switching movements were executed without having trainmen so placed that visual signals could be passed from one end of the movement to the other. This method of doing the work is referred to as "blind switching."

4. In answer to specific interrogatories, the jury found the total amount of damages to be $186,735 but attributed twenty per cent of the negligence which was a proximate cause of the accident to the plaintiff.

cretion in refusing to grant a new trial due to the excessiveness of the verdict, the admission of testimony in regard to defendant's employment policy which contradicted written contract provisions, and improper and prejudicial remarks of plaintiff's counsel in his closing argument.

Initially, defendant contends that the verdict was so grossly excessive as to show that the jury disregarded the evidence, being influenced instead by sympathy, passion and prejudice, and that the refusal of the trial judge to grant a new trial on this ground was a clear abuse of discretion. There is little, if any, dispute as to the nature of the injury sustained by the plaintiff and as to his medical history subsequent to the accident. Plaintiff suffered almost complete traumatic amputation of the left foot and lower leg at a point just above the ankle, with accompanying fractures and crushing damage to the muscular tissue of the lower leg. Two operations involving further amputation of his leg have been performed and in addition an excision was performed on a draining sinus. The mental shock resulting from the accident was extreme. Immediately following the accident, plaintiff was conscious and subject to excruciating pain. Although he has been fitted for a prosthesis, recurrent infection has prevented wearing of it from time to time. Reemployment as a yard freight brakeman is not considered feasible due to the fact that it involves boarding and alighting from rapidly moving railroad cars. At the time of trial, plaintiff was 35 years old and had a life expectancy of 37.6 years and an earning capacity, prior to the accident, in excess of $6,000 a year. There was evidence from which the jury could find that pain, suffering, and inconvenience of a most substantial nature have existed and will continue to some degree as long as plaintiff lives. Additionally, it could be found that he has never obtained a good stump so that he suffers from its painful breakdown on occasion.

This court has succinctly and frequently stated that the question of excessiveness of a verdict is primarily a matter to be addressed to the sound discretion of the trial court. Its determination that the verdict is not excessive will not be disturbed upon appeal unless a manifest abuse of discretion is indicated. Lebeck v. William A. Jarvis, Inc., 3 Cir., 1957, 250 F.2d 285; Trowbridge v. Abrasive Co. of Philadelphia, 3 Cir., 1951, 190 F.2d 825; Dubrock v. Interstate Motor Freight System, 3 Cir., 143 F.2d 304, certiorari denied, 1944, 323 U.S. 765, 65 S.Ct. 119, 89 L.Ed. 613. Only where the verdict is so grossly excessive as to shock the judicial conscience will this court reverse the determination of the trial judge and grant a new trial. Thomas v. Conemaugh & Black Lick R. R. Co., 3 Cir., 1956, 234 F.2d 429. It is not within the province of this court to determine what would be a fair recompense for the injuries sustained by the plaintiff; rather, it is our duty to determine whether the trial judge, weighing all the evidence on the question of damages, has exercised his considered judgment as to a rational verdict in a judicial manner. In the instant case the trial judge acknowledged that the verdict appeared "to be of great magnitude and subject to severe scrutiny." After a careful cataloguing of the various elements of damage brought forth during the trial, he concluded that in view of the extraordinary trauma which plaintiff endured he could not conclude that the verdict was excessive or shocked the conscience of the court. We are not of the opinion that the trial judge abused his discretion in arriving at this conclusion, and therefore further review by this court would be unjustified.

Defendant also asserted in its brief that plaintiff's negligence was much greater than the twenty per cent found by the jury. However, defendant recognizes that "this question alone is not subject to appellate review * * *." Apparently, its contention, although not specifically articulated, is that the per-

centage of contributory negligence found by the jury is an indication of the passion and prejudice which motivated the jury. Suffice it to say that the conclusion we have reached in the preceding paragraph necessarily disposes of this contention.

As to the testimony admitted by the court regarding defendant's employment policy, it is asserted that it was inconsistent with the written contract between the defendant railroad and the Brotherhood of Railroad Trainmen, representing defendant's employees. The specific clause relating to reemployment of disabled employees states: "Effort will be made to furnish employment suitable to their capacity to men who have been injured in the discharge of their duties." Defendant relies upon the well-established maxim of law that a contract which is clear and explicit in its terms may not be altered by oral testimony. Even assuming the proper application of the maxim to the facts of this case, such reliance is wholly unjustified. Defendant itself first introduced testimony through Vickers, trainmaster in charge of the transportation department of the railroad, in regard to the future employment possibilities of the plaintiff. Only when the plaintiff attempted to rebut this testimony and the inferences that could be drawn therefrom did defendant bring before the court the contract clause and base its objection thereon. The trial judge, in order to determine the proper scope of rebuttal testimony, properly inquired of defendant's counsel as to the relevancy and purpose of Vickers' testimony. This inquiry was wholly within the bounds of judicial propriety. See Norwood v. Great American Indemnity Co., 3 Cir., 1944, 146 F.2d 797; Kettenbach v. United States, 9 Cir., 202 F. 377, certiorari denied, 1913, 229 U.S. 613, 33 S.Ct. 772, 57 L.Ed. 1352. The subsequent admission of testimony by Titler, General Chairman of the Brotherhood of Railroad Trainmen on the Monongahela Railway, in rebuttal to the evidence elicited from Vickers was clearly within the discretion of the trial judge. As was stated in Kettenbach v. United States, 202 F. at page 385:

"The trial judge in a federal court is not a mere presiding officer. It is his function to conduct the trial in an orderly way with a view to eliciting the truth, and to attaining justice between the parties. It is his duty to see that the issues are not obscured, that the trial is conducted in a proper manner, and that the testimony is not misunderstood by the jury, to check counsel in any effort to obtain an undue advantage or to distort the evidence, and to curtail an unnecessarily long and tedious or iterative examination or cross-examination of witnesses."

Defendant also contends that the failure of the trial judge to grant a new trial on the basis of the improper and prejudicial closing argument of plaintiff's counsel was error. In this regard it must be noted that defendant objected to only three matters during plaintiff's summation: a remark concerning efforts made by defendant to delay the trial, a statement relative to the testimony proffered by defendant concerning its reemployment intentions as regards plaintiff, and discussion of figures as to plaintiff's possible loss of earnings. Only the latter two objections were timely renewed upon the motion for a new trial.

In actuality these latter two objections, although made separately, relate to one and the same line of argument—a summation concerning plaintiff's possibility of reemployment by the railroad. Counsel for plaintiff in discussing the testimony of Titler and contrasting it with the testimony of defendant's witness, Vickers, pointed out to the jury the limited authority of the latter official. Certainly the discussion was relevant and related to evidence that had been admitted during the trial. The entire issue of reemployment possibilities had been opened up by defendant through the testimony of Vickers and the reasonable inferences to be drawn therefrom.

Specifically, defendant objects to the fact that plaintiff's counsel alluded to the ownership of the defendant railroad by other railroads. Out of the context of the issue raised by defendant this argument might be improper and prejudicial. However, considered in the light of the authority of Vickers to bind the defendant, it appears to be within the bounds of propriety. The scope of authority granted Vickers by the owners of defendant railroad was pertinent and indeed crucial in regard to his testimony and a legitimate matter for argument.

Further, defendant objects to the presentation to the jury by plaintiff of figures from which the jury might determine loss of future earnings. Some of the figures, such as his earning power prior to the accident, were already in evidence. However, other figures, such as the problematical amount plaintiff might be able to earn in the future, were not. The trial judge overruled the objection of the defendant to this line of argument but offered counsel for the defendant an opportunity to reply to it, which was accepted. We do not think the statement was prejudicial. The opportunity afforded defendant to reply to this argument and the precise charge of the trial court cured any possible harm that might have been done.

Approximately eight months after filing its motion for a new trial, defendant supplied a supplementary list of ten additional reasons in support of its motion for a new trial. The district court was of the opinion that under Rule 59(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., it lacked authority to grant a new trial on reasons assigned after the ten-day period for filing and serving the motion had expired. We agree with the district court. Francis v. Southern Pacific Co., 10 Cir., 1947, 162 F.2d 813, affirmed, 1948, 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798; Cheffey v. Pennsylvania R. R. Co., D.C.E.D.Pa.1948, 79 F.Supp. 252; McHugh v. Audet, D.C. M.D.Pa.1947, 72 F.Supp. 394; 10 Cyclopedia of Federal Procedure § 34.17 (3d ed. 1952); 6 Moore, Federal Practice ¶ 59.09 [2] (2d ed. 1953). And see Fine v. Paramount Pictures, Inc., 7 Cir., 1950, 181 F.2d 300; Schuyler v. United Air Lines, Inc., D.C.M.D.Pa.1950, 94 F. Supp. 472, affirmed per curiam, 3 Cir., 1951, 188 F.2d 968. But even were this not so, we would be constrained to affirm the trial court inasmuch as the lack of objection to these matters at the trial and the failure to assign them in the original motion for new trial clearly indicates that the defendant itself did not consider these items significant and prejudicial.

The defendant urges that counsel for the plaintiff was permitted to argue irrelevant issues to the jury in his closing address. Where, through inadvertence or imprudence, an isolated irrelevant issue is raised and presented to the jury, it is for the trial court to determine, in its discretion, whether a caution to the jury may not be sufficient to eradicate its prejudicial effect. This court will reverse only for an abuse of such discretion. Smith v. Philadelphia Transp. Co., 3 Cir., 173 F.2d 721, certiorari denied, 1949, 338 U.S. 819, 70 S. Ct. 63, 94 L.Ed. 497. Where numerous irrelevant issues of a prejudicial nature are raised and presented to the jury by both parties, this court, on appeal, will reverse and grant a new trial. Robinson v. Pennsylvania R. R. Co., 3 Cir., 1954, 214 F.2d 798. In the instant case a number of irrelevant issues, some highly prejudicial, were brought into the trial and argued to the jury. All of these issues were, without exception, raised by defendant. Ordinarily, in such case, if the trial court in its discretion decides that an admonition to the jury by the court is not sufficient, it may grant a mistrial to the innocent party. If, however, the innocent party chooses to proceed with the trial and take its chance with the jury, it may be granted a reasonable opportunity by the court to meet the irrelevant issues by presentation of evidence and argument.

The judgment of the district court will be affirmed.