Morris EISENBERG and Fannie Eisenberg, Appellants,

v.

Francis R. SMITH, Collector of Internal Revenue.

Herman SCHAEFFER and Rose Schaeffer, Appellants,

v.

Francis R. SMITH, Collector of Internal Revenue.

Nos. 12713, 12714.

United States Court of Appeals

Third Circuit.

Argued Jan. 6, 1959.

Decided Feb. 13, 1959.

Seymour I. Toll, Joseph S. Lord, 3d, Philadelphia, Pa. (Richter, Lord & Levy, Philadelphia, Pa., on the brief), for appellants.

Louise Foster, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attys. Dept. of Justice, Washington, D. C., Harold K. Wood, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

These are suits by the taxpayers, Eisenberg and Schaeffer, to recover on what they claim to be incorrect exactions of income tax for the years 1945 to 1949, inclusive.[1] Plaintiffs have paid their tax and now seek to get it back. They lost in the lower court. The focal legal controversy is whether they were improperly taxed as the sole partners in a concern called Bailey's Furniture Company instead of bearing their fractional proportion of what is claimed as being a partnership made up of nine partners.[2] There are three principal issues in the case.

## I. Are the Plaintiffs Properly in Court?

The Government raises a number of questions concerning whether the plaintiffs have standing in this Court to pursue their appeal. It is pointed out that instead of the appeal being taken from the judgments of the district court bearing date November 18, 1957, they are appealing from an order denying alternative motions for judgment notwithstanding the verdict or for a new trial. As to the first the Government says that the new trial is a matter within the discretion of the trial court and is not reviewable on appeal. But on an appeal

---

1. The wives of taxpayers Eisenberg and Schaeffer are joined as plaintiffs because these taxpayers made joint returns. They have no individual interest in the controversy aside from that which flowed from the joint return.

2. The Internal Revenue Code of 1939 governs this case. The applicable section provides with respect to the years in question that "the term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization." Int.Rev.Code of 1939, 26 U.S.C. § 3797(a) (2) (1955).

properly taken this Court has a limited review to determine whether the trial court abused its discretion, even where, as in this case, a new trial was sought on the ground that the verdict was against the weight of the evidence. See John E. Smith's Sons Co. v. Lattimer Foundry & Machine Co., 3 Cir., 1956, 239 F.2d 815, 816; Hill v. Pennsylvania Greyhound Lines, Inc., 3 Cir., 1949, 174 F.2d 171, 172. 6 Moore, Federal Practice ¶ 59.08 [5], p. 3820 (2d ed. 1953).

■ The Government next says that the plaintiffs are not entitled to consideration of their motion for judgment notwithstanding the verdict, because they made no motion for a directed verdict at the conclusion of the presentation of all the evidence. F.R.Civ.P. 50(b), 28 U.S.C., provides that " * * * a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * *." Rule 50(a) states that "A motion for a directed verdict shall state the specific grounds therefor." These plaintiffs, in the first of their requested points for charge to the jury, did ask for the following: "On the basis of the evidence and the applicable law, you are directed to find a verdict for the Plaintiffs."[3]

■ This request, thrown in along with a considerable list of points for charge, is not, we think, a compliance with the rule as stated in section 50(a) and quoted above. It certainly gives the trial judge no hint of what the position of the party making the motion is, except that he wants the lawsuit decided in his favor. The purpose of the rule requiring the stating of grounds is, of course, to let the trial judge and opposing counsel see what the problem is so that the decision will be the best that can be had. 5 Moore, Federal Practice ¶ 50.04, p. 2321 (2d ed. 1951). Virginia-Carolina Tie & Wood Co., Inc. v. Dunbar, 4 Cir., 1939, 106 F.2d 383, 385; Ryan Distributing Corp. v. Caley, 3 Cir., 1945, 147 F.2d 138, 140.

■ In addition to what has been said above, we must also notice Rule 73 dealing with "Appeal to a Court of Appeals." That rule provides as follows:

> "(a) *When and How Taken.*
> * * *
>
> "A party may appeal from a judgment by filing with the district court a notice of appeal. * * *
>
> "(b) *Notice of Appeal.* The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from; and shall name the court to which the appeal is taken. * * *"

As already pointed out this appeal was not from the judgment.[4] How can we say that Rule 73 is complied with?

All this leaves the plaintiffs in a rather unhappy procedural position. We should prefer not to have the case rest on this ground alone, however. The rules of civil procedure are designed to assist civil business in an ordinary fashion but surely should not be so literally interpreted as to prevent a fair result in a meritorious case. We pass, therefore, to the other parts of the case which deal with the merits.

---

3. Plaintiffs' motion for judgment notwithstanding the verdict states that the "plaintiffs move the Court, in accordance with plaintiff's binding instructions presented at the close of the evidence, to set aside the verdict and the judgment entered thereon and to enter judgment n. o. v. in favor of the plaintiffs."

4. 28 U.S.C. § 1291 (1952) provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts * * *."

The word "decision" as used in § 1291 of the Judicial Code is equivalent to "judgment" under Rule 73. This point is ably covered by Judge Magruder in In re Forstner Chain Corp., 1 Cir., 1949, 177 F.2d 572, 576. The case also contains a lucid explanation of the nature of a "judgment." Id., at pages 576–578.

## II. Are Plaintiffs Entitled to a Judgment Notwithstanding Verdict or to a New Trial?

The taxpayers cite to us the case of Brady v. Southern Ry. Co., 1943, 320 U.S. 476, 479–480, 64 S.Ct. 232, 234, 88 L.Ed. 239, in which the Court, through Mr. Justice Reed, points out that when the evidence is such that "without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict," it is the trial court's business to see that that conclusion is reached. We have no doubt of this rule. Ryan Distributing Corp. v. Caley, 3 Cir., 1945, 147 F.2d 138, 140. 5 Moore, Federal Practice ¶ 50.02 [1] (2d ed. 1951). Neither does any other informed lawyer. But acceptance of this general proposition is a long way from saying that it applies to this case.

The appellants properly lay great stress on the decision in Commissioner v. Culbertson, 1949, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. They take a passage from the discussion by the Chief Justice which sets out the test for determining whether a family partnership exists. The paragraph they quoted and relied on reads as follows:

"The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case [Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670], but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." 337 U.S. at page 742, 69 S.Ct. at page 1214.

Taxpayers then proceed to argue that the undisputed evidence, consisting of documents and stipulated facts, is sufficient to make out an indisputable case for the conclusion that these taxpayers did establish a family partnership consisting of Morris Eisenberg, Herman Schaeffer and seven family trusts. The argument is a perfectly legitimate argument to make. But the conclusion is wrong.

This case was very skillfully handled by the trial judge as he presented it to the jury. He must have had the Culbertson decision on the bench in front of him or else very recently read it with great thoroughness. Several times he stated to the jury the problem which it had to decide: "whether there really was a partnership existing between these two partners and the seven trusts * * *." "Did these parties * * * in good faith and acting with a business purpose intend to join together in the present conduct of this enterprise?" "You have to take the whole record together, all the evidence in the case, and try to determine what the intention honestly was." [5] In his opinion denying the motions for judgment or for a new trial the judge correctly points out what the Culbertson decision did. It "definitely discarded the use of objective tests in family partnership cases." That, we think, is right.[6] The test now is a subjective one, as the judge gave it to the jury. It compels the trier of the fact in each case to ascertain the intent of the parties entering into a transaction which may or may not constitute a partnership under the United States tax laws depending upon the state of mind of the individuals involved. As the Supreme Court in Culbertson points out in a footnote in the language of Lord Justice Bowen: "'the state of a man's mind is

---

5. The jury charge of the district court is reported at 58–1 USTC ¶ 9193 (CCH).

6. See e. g., Ardolina v. Com'r, 3 Cir., 1951, 186 F.2d 176, 180; Jahn v. Pedrick, 2 Cir., 1956, 229 F.2d 71, 73.

as much a fact as the state of his digestion.'" 337 U.S. at page 743, note 12, 69 S.Ct. at page 1215.

All this the trial judge had in mind, and the Supreme Court in deciding Culbertson had it in mind. If the plaintiffs in this case had demonstrated intent with the definiteness with which the objective facts are established, they would have an argument which would entitle them to the relief they seek. But the case is far from that.

■ Messrs. Eisenberg and Schaeffer are long business associates. In 1936 they started the business enterprise known as Bailey's Furniture Company. Most of the company's original capital came from various savings accounts which each of the two men had previously established in his own name as trustee for one or other of his children. Several years later, in 1940, the money not being paid back to the children's accounts, they set up these seven trusts for the benefit of the children with each settlor the trustee for his own children. The trusts were reformed in 1943 and in each case the settlor's wife was co-trustee with a brother-in-law of the settlor. So far as the records show the wives did not participate in the management of either the trusts or of the Bailey's Furniture enterprise. One of the trustees during the period in question had died; the other was a witness. He disclaimed any familiarity with the operation of the installment furniture business; but he did give some testimony about meeting and talking over the business with Messrs. Eisenberg and Schaeffer. Deceased trustee, of course, could not be heard from.

The evidence revealed that certain of the company's charitable contributions were credited solely to Eisenberg and Schaeffer, and not to the trusts. Eisenberg and Schaeffer drew heavily on their shares of the capital account; the capital account of the trusts remained untouched. Although there is testimony that on some occasions the taxpayers discussed business policy with the trustees, it is clear that Eisenberg and Schaeffer alone controlled the operation of the business. True, one of Schaeffer's sons did participate actively in the business after he came back from the Army; but it is to be remembered that in the taxable years in question he was not a trustee, but one of the beneficiaries of the trust.

There really was very little actual dispute on the oral testimony presented and, of course, none on the facts that were stipulated in the documents which were introduced. While under the Culbertson decision no one of the facts referred to above sufficed to prove either the existence or nonexistence of the partnership, there was enough of a cloud in the picture to warrant submission of the case to the jury. The question for the jury turned upon the very difficult problem: Was all this an actual bona fide partnership or was it something that looked like a partnership and was not? We certainly cannot say that the conclusion of the jury that this was not a bona fide partnership under the tax laws of the United States is an irrational conclusion. Accordingly, the trial judge's refusal to enter a judgment notwithstanding the verdict was not error; nor was his refusal to grant a new trial on the ground that the verdict was against the weight of the evidence an abuse of discretion.

### III. Do the Statements of Counsel Entitle Plaintiffs to a New Trial?

■ The taxpayers complain bitterly about a remark made by counsel for the Government in his summation. In the course of his address to the jury he discussed the original trusts set up by Eisenberg and Schaeffer for their children. Then he said:

> "When it came 1936 and Schaeffer and Eisenberg wanted to open up a business they didn't have the money on their own, so what do they do? They steal the kids' money."

The language is described by the appellants as an "irrelevant untruth" which "far transcended the bounds of decent advocacy. * * *" We agree that counsel's language was too strong. This Court has several times talked about im-

proprieties of counsel in the course of trial and has, in a strong enough case, reversed and ordered a new trial for that reason. See Straub v. Reading Co., 3 Cir., 1955, 220 F.2d 177; Robinson v. Pennsylvania R. Co., 3 Cir., 1954, 214 F.2d 798.

The set of facts which led up to this comment was this. In 1930 these taxpayers established the savings accounts for the children with themselves as trustees. When later they started this furniture business they needed capital. They proceeded to get that capital from the savings funds thus established. No note was given. No interest was paid. They simply took the money from the savings accounts and used it in the business. In other words, the situation, on its face, is that of a declared trustee using the trust res for his own business without any indication of the knowledge or consent of the beneficiaries. Restatement, Trusts § 170, comment *l* (1935). The dilemma in which the taxpayers are left with this situation is obvious. If the suggestion is made that the original gift to the children was not complete, then the foundation for the claimed partnership is weakened. On the other hand, if there was a complete gift, then the taxpayers were doing something which, as trustees, they ought not to have done.

All of this was the background of the charge made by Goverment counsel in the excerpt quoted.

In examining the seriousness of what could have happened from the charge made, we should look at the record and see what the court did. Taxpayers' counsel objected to the remark as improper. The judge said, "I wouldn't characterize it as stealing." Counsel argued since there was no note given he thought his argument was proper. Then the court said, "I would hesitate to characterize it as that. I don't think it was." Then the taxpayers' counsel suggested it was a tentative trust and the court said he would take back what he said. Finally, the judge concluded, "I was just trying to tone down the statement that they stole the money, which I don't think they did. I do think it could have been held to be a breach of trust under certain circumstances."

This was all there was to it. The jury would certainly take the word of the judge on the legal point as against the argument of counsel. And the judge made it perfectly clear that "stolen" was not the proper characterization of the withdrawal of the money.

This trial was not a rough and tumble affair as was the situation in other cases which we have had recently in this Circuit. See Russell v. Monongahela Ry. Co., 3 Cir., 1958, 262 F.2d 349; United States v. Stirone, 3 Cir., 1958, 262 F.2d 571. In fact, as lawsuits go, it was quiet as a tax case should be. The Government attorney in his summation did not make an impassioned oration. The one thing he did was to say "stolen" instead of "improperly withdrew." That is not enough for reversal.

The judgment of the district court will be affirmed.

BIGGS, Chief Judge (dissenting).

I concur with the majority in respect to points "I" and "II" of the opinion but I cannot agree as to point "III" relating to statement made by the Collector's counsel in his summation to the jury as to the conduct and intent of the Eisenbergs in setting up the family partnership: "They steal the kids' money." As the majority opinion well puts it: "The question for the jury turned upon the very difficult problem: Was all this an actual bona fide partnership or was it something that looked like a partnership and was not?" Into this delicate and vital issue of fact counsel for the Collector threw to the triers of fact his bald and, to me, unjustified comment. The *kids* referred to were the taxpayers' own children. It would be difficult to think of a remark better calculated to inflame a jury. It was as "flagrantly abusive" as the statements we so characterized in Robinson v. Pennsylvania R. Co., 3 Cir., 1954, 214 F.2d 798, 801–802, and which furnished a basis for reversal in that case. The remark was an error as

egregious as that which we so characterized in Watn v. Pennsylvania R. Co., 3 Cir., 1958, 255 F.2d 854, 858–859. Cf. Straub v. Reading Company, 3 Cir., 1955, 220 F.2d 177. Moreover, the trial court, though making some remarks about counsel's statement, did not inform the jury to disregard it.

Trial of jury cases is not an easy matter and counsel should conduct themselves in a proper manner before court and the jury. Difficulties invariably arise when counsel become abusive. The dignity and prestige of a court are affected thereby and trials tend to become heated and partisan. I think that under the circumstances the Collector should not have the advantage of his verdict and I would order a new trial.

For the reasons stated I must respectfully dissent.