Michael MASSARO

v.

UNITED STATES LINES COMPANY

v.

NORTHERN METAL CO.

Civ. A. No. 24383.

United States District Court
E. D. Pennsylvania.

Oct. 30, 1961.

Freedman, Landy & Lorry, by W. R. Lorry, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, by Harrison G. Kildare, Philadelphia, Pa., for U. S. Lines Co.

Blank, Rudenko, Klaus & Rome, by John B. Brumbelow, Philadelphia, Pa., for Northern Metal Co.

WOOD, District Judge.

Plaintiff, a longshoreman, was injured while working aboard the defendant's vessel, the S. S. American Guide.

On July 26, 1957, a gang of twelve stevedores were directed to go from the main deck to the lower hold to remove cargo. On their way to the lower hold, they removed the beams from the hatch of the upper 'tween deck and then pro-ceeded to the lower 'tween deck. There they found a large amount of debris, including "separation paper" scattered over the entire area, including the hatch and coaming. They swept this up and pushed it back between conex boxes and in open spaces surrounding the hatch. They then removed the hatch boards and beams and entered the lower hold to begin unloading operations.

During this period, the plaintiff was doing other work on the main deck. After lunch he was directed to go into the lower hold to relieve one of the gang working there who had been taken ill. He worked with the gang in the lower hold for about forty-five minutes, when he was directed to return to the main deck. To do so, he ascended a ladder in the forward section of the hatch and when he reached a point where he was level with the lower 'tween deck, he heard a signal to "clear the hatch." This required that he immediately get off the ladder in order to avoid the possibility of being struck by a draft entering or leaving the open area of the hatch. As he stepped from the ladder onto the coaming of the lower 'tween deck, he slipped and fell into the lower hold and was severely injured.

There was testimony that there was a large piece of paper which lapped over the edge of the coaming at the point where the ladder met the lower 'tween deck and that his foot slipped on this just before he fell. Although there was evidence that the longshoremen had cleaned up the debris around the 'tween deck hatch opening, there was also evidence that gusts of wind were blowing through the open area during the day. From this evidence it could be reasonably inferred that some of the paper had blown back into the area of the coaming, at or near where the accident occurred.

■ Interrogatories relative to unseaworthiness and negligence were submitted to the jury.[1] In answer to these, the

1. "1. Was the defendant's vessel, the S.S. 'American Guide', unseaworthy and was such unseaworthiness the proximate cause of the injuries?

"2. Was the defendant shipowner (United States Lines Company) negligent and was such negligence the proximate cause of the injuries?"

jury found that the ship was both unseaworthy and negligent and awarded damages in the sum of $90,000.

As to the third-party action, the trial judge attempted to follow the view of the United States Court of Appeals for the Third Circuit as expressed in the case of Beard v. Ellerman Lines, Ltd. v. Atlantic and Gulf Stevedores, Inc., 3 Cir., 1961, 289 F.2d 201, certiorari granted 82 S.Ct. 122, by submitting to the jury two interrogatories.[2] The jury found that the stevedoring company did not know, nor should it have known, of any unsafe condition existing on the lower 'tween deck. It further specifically found that the stevedoring company did not carry on its duties in a place where it was unsafe to work because of the condition existing on the lower 'tween deck at the point where the accident occurred.

The trial judge, in instructing the jury with regard to these interrogatories, stated:

"Now those interrogatories are addressed to the question as to whether or not there was a situation of danger, whether there was a hazardous situation, there where that ladder met the tween deck; and those questions are directed to the fact that if the stevedoring company knew that, when they started work, and nevertheless continued work there throughout the day, under those circumstances they could be liable over to the ship. The ultimate question as to determining that liability as a matter of law will be left to the court. What the court decides will depend on how you answer those last two questions." NT 239–240.

As has been stated, the jury found that the longshoremen did not know, nor should they have known, of any unsafe condition existing on the lower 'tween deck. We think that this finding was supported by the evidence. While it is indisputable that the longshoremen knew that the cargo on the 'tween deck was stowed too close to the edge of the coaming, the men who witnessed the plaintiff's fall attributed his slipping not to the cargo stowage, but to paper which had apparently blown into the space between the coaming and the stow. There is ample testimony in the record to the effect that the longshoremen did not notice this paper after they had swept up the lower 'tween deck early that morning, as they had had no further occasion to walk on that deck.

The jury also found that the longshoremen did not carry on their duties in an unsafe place to work. Defendant contends that this finding is contradictory to the finding that the ship was unseaworthy and negligent, since the latter finding must have been based upon the jury's evaluation of the 'tween deck as an unsafe place. Relying upon the Beard case, supra, the defendant contends that, as a matter of law, the longshoremen must be adjudged to have carried on their work in an unsafe place to work, and that therefore the third-party defendant must be liable to the defendant.

As the record shows, the only condition alleged by plaintiff to have amounted to unseaworthiness, and/or an unsafe place to work, was the condition on the lower 'tween deck. But it must be remembered that the longshoremen were carrying on their unloading operation in the lower hold. No one had been on the lower 'tween deck since the men swept it up that morning. No one had to stand or walk on it as a part of the unloading operation. Thus, even though the jury found the ship unseaworthy and negligent because of the condition on the lower 'tween deck, it does not *necessarily* follow (in our opinion) that the long-

---

2. "6. Did the stevedoring company, Northern Metal Company, through its agents in charge of the work, know or should have known that there was an unsafe condition existing at or near the ladder where it reached the lower tween deck?

"7. Did the stevedoring company, Northern Metal Company, carry on its duties in a place in which it was unsafe to work by reason of the condition existing on the ladder at the point where it reached the tween deck?"

shoremen handled the cargo in an unsafe place to work.

If plaintiff had been injured when walking across the deck to the washroom and slipping on some jello on the deck, it would seem rather strained to hold, as a matter of law, that the longshoremen were carrying on their work in the lower hold in an unsafe place to work. Granted, the case at bar is not as clear as our hypothetical case; but we do not interpret the Beard case, supra, as requiring the court to find, as a matter of law, that the longshoremen carried on their duties in an unsafe place to work in every case in which a jury has found in the plaintiff's case that the ship was unseaworthy and negligent because of some condition existing aboard. For these reasons, we think that the defendant's motions with regard to the third-party action must be denied.

With regard to the action of the plaintiff against the defendant, we think only one point merits discussion; that is, the defendant's argument that the verdict was excessive.

■ Unfortunately, although the defendant did file its motion for a new trial within ten days after the entry of judgment, it did not file the *ground* of excessiveness of the verdict as a reason for granting a new trial until after the ten-day period had elapsed.[3] There is a conflict among the authorities as to whether Rule 59(b) prohibits the District Court from considering an additional ground for a new trial or an amendment to a motion for a new trial when filed after the ten-day period has run even though the principal motion was filed within that period.[4] However, the United States Court of Appeals for the Third Circuit in the case of Russell v. Monongahela Railway Co., 3 Cir., 1958, 262 F.2d 349, 354, has indicated its approval of the majority view; namely, that the District Court may not consider such additional ground.[5]

■ Defendant relies upon an opinion by Senior Judge Welsh [6] in which he held that under *exceptional circumstances*, grounds for a new trial advanced after the expiration of the ten-day period could be considered by the court under the provisions of Rule 60(b). We think that no such exceptional circumstances are presented by the case at bar and that Rule 60(b) is not applicable. We conclude that we are bound by the view expressed by the United States Court of Appeals for

**3.** Rule 59(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., requires that a motion for a new trial shall be served not later than ten days after the entry of judgment.

**4.** See Moore's Federal Practice, Vol. 6, pp. 3849, 3850, where it is stated:
"A motion under Rule 59 [New Trials: Amendment of Judgments] made within the time prescribed in subdivision (b) ['a motion for a new trial shall be served not later than 10 days after the entry of the judgment'] suspends the finality of the judgment and tolls the time for taking an appeal. Since, therefore, the finality of the judgment is suspended by the timely motion, the Advisory Committee determined that to permit judicial enlargement of the time for serving affidavits is justified to allow a more perfect consideration of the motion by the court. Consistent with this reasoning, we believe that once the finality of the judgment has been terminated by a timely motion for a new trial, a proper construction of Rule 59 should permit the trial court, in the exercise of a sound judicial discretion, to allow a subsequent amendment of the motion to state additional grounds for the granting of the motion * * * The weight of authority, though, supports the view that an amendment to add an additional ground may not be allowed after the 10 day period has elapsed."

**5.** In that case the court stated:
"Approximately eight months after filing its motion for a new trial, defendant supplied a supplementary list of ten additional reasons in support of its motion for a new trial. The district court was of the opinion that under Rule 59(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A., it lacked authority to grant a new trial on reasons assigned after the ten-day period for filing and serving the motion had expired. We agree with the district court. [Citing cases.]"

**6.** Brest v. Philadelphia Transportation Company et al., D.C.E.D.Pa.1959, 24 F. R.D. 47.

the Third Circuit in the Russell case, supra, and therefore we do not reach the merits of the contention that the verdict was excessive.

Had this reason been assigned at the proper time, however, we would still not be persuaded to set aside or reduce this verdict, if it were in our power to do so. As was stated to counsel, we think this was a high verdict but it is not one that shocks the conscience of the court, nor one that moves us to take any extreme action to reduce it by remittitur, or to grant a new trial on that ground alone. We are of the opinion that the great weight of authority is that unless the verdict shocks the conscience of the court, the province of the jury should not be invaded in this regard.

In all other regards, we think the defendant's motions in the original action are without merit and must be denied.