Michael MASSARO

v.

**UNITED STATES LINES COMPANY,**
Appellant

v.

**NORTHERN METAL COMPANY.**
No. 13879.

United States Court of Appeals
Third Circuit.

Argued April 26, 1962.

Filed Aug. 28, 1962.

**300**

Harrison G. Kildare, Philadelphia, Pa., (Rawle & Henderson, Thomas F. Mount, Philadelphia, Pa., on the brief), for appellant.

Wilfred R. Lorry, Philadelphia, Pa., (Charles Sovel, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellee Michael Massaro.

John B. Brumbelow, Philadelphia, Pa. (Goncer M. Krestal, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., on the brief), for appellee Northern Metal Co.

Before BIGGS, Chief Judge, and HASTIE and SMITH, Circuit Judges.

BIGGS, Chief Judge.

The longshoreman-plaintiff, Massaro, sustained serious injuries while employed by Northern Metal Company, the third-party defendant, to discharge cargo from the No. 2 hold of the S.S. American Guide, owned by the defendant and third-party plaintiff, United States Lines Company. On July 26, 1957, at about 2 P.M. Massaro was in the vessel's No. 2 hold and was directed by his foreman to go back to the deck. He had climbed a permanent vertical steel ladder to a point about at the level of the lower 'tween deck, when he heard the stevedore hatch-tender on the main deck shout a warning to clear the hatch, indicating that a draft of cargo was about to be lowered into the No. 2 hold. Massaro attempted to step off the ladder to get into a less exposed position on the 'tween hatch coaming. As he started to put his left foot on the coaming he saw that large containers, conex boxes, had been stowed so near the edge of the coaming and so close together as to give Massaro only a small space in which to stand clear of the ladder and on the coaming. Massaro testified that he "didn't want to hit them [the conex boxes] with my feet and bounce off [the coaming] that way". He stated that in his attempt to avoid the boxes, he failed to note loose pieces of cargo-separation paper lying on the coaming and he put his left foot down on a piece of the paper. This caused him to slip and he fell twenty-two feet to the bottom of the hold. Evidence was introduced from which it could be reasonably inferred by the jury that a gust of wind had blown the paper back onto the coaming after it had been cleared away by the longshoremen that morning.

### I

Massaro set out two causes of actions in one complaint. He alleged, inter alia, that he was injured because of the unseaworthiness of the vessel, and that the owner of the vessel, United, was negligent in not furnishing him with a safe place in which to work.[1] United answered that the accident had been caused by the negligence of Massaro and his fellow employees of Northern Metal and that any claim which he might have was limited to benefits under Section 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 905.

United, as already indicated, brought Northern Metal upon the record as a third-party defendant, alleging that the accident occurred because of the negligence of Northern Metal in failing to provide competent supervisors, to perform its stevedoring service in a safe, proper and workmanlike manner, and to furnish a safe place for Massaro to

---

1. The complaint alleges damages in the amount of $300,000; that Massaro was a citizen and resident of Pennsylvania, and that United States Lines Co. is a corporation of New Jersey.

work.[2] United has claimed "full" indemnity from Northern Metal for all damages, interest and costs awarded to Massaro against United.

Northern Metal filed an answer setting up as defenses (1) that it had not been negligent; (2) that the third-party action was barred by Section 5 of the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 905; (3) that there was no stevedoring contract "of any kind, express or implied" between United and Northern Metal, and therefore no contractual duty owing that could have been breached by Northern Metal and that therefore there was no claim on which indemnity could be predicated; and finally (4) that no cause of action was stated by the third-party complaint. The court below submitted special interrogatories to the jury. The interrogatories and the answers are set out below.[3]

On May 1, 1961, the third-party plaintiff, United, moved for judgment in its favor against Northern Metal alleging that the evidence and the answers to the interrogatories, when viewed in light of principles enunciated by this court in Beard v. Ellerman Lines, Ltd., 3 Cir., 289 F.2d 201 (1961),[4] required such a judgment. That day the court below denied this motion with the warning that it would be set down for argument at a

later date when it would be treated as a motion for new trial or judgment n. o. v. The court entered judgment in favor of Massaro and against United in the sum of $90,000, with costs and in favor of Northern Metal and against United with costs. On the same day United, as third-party plaintiff, moved for judgment n.o.v. on the grounds, first, that the answers of the jury to interrogatories 6 and 7 contradicted the answers they had made to interrogatories 1 and 2 finding the vessel unseaworthy and that United was negligent in not maintaining a safe place for the stevedores to work, asserting in substance that if the coaming with the paper was an unsafe place to work, that condition was also known to Northern, through its employees prior to the accident; and, second, that the answers to interrogatories 6 and 7 were "rendered irrelevant" by the jury's answer that Massaro's accident was caused by unseaworthiness because United was entitled as a matter of law to indemnity under our decision in Beard v. Ellerman Lines, Ltd., supra. United asserts that in the cited case "similar findings by the jury" were set aside by this court on appeal.

United, as defendant and third-party plaintiff, moved also on May 1 for a new trial basing its motion on seven reasons. The first five asserted that the jury's an-

2. The third-party complaint alleges that Massaro is a resident of Pennsylvania, that United is a New Jersey corporation, and that Northern Metal is a Pennsylvania corporation. The complaint also alleges that the amount in controversy "exceeds the sum of $3000.00, exclusive of interest and cost." It was filed May 5, 1958. See the Act of July 25, 1958, 72 Stat. 415, amending 28 U.S.C. § 1332(a).

3. As follows:
    1. Was the defendant's vessel, the S.S. "American Guide", unseaworthy and was such unseaworthiness the proximate cause of the injuries? *Yes.*
    2. Was the defendant shipowner (United States Lines Company) negligent and was such negligence the proximate cause of the injuries? *Yes.*
    3. What are the damages suffered by plaintiff, Michael Massaro? *$90,000.00.*
    4. Was the plaintiff, Michael Massaro,

negligent and did this negligence contribute to his injuries? *No.*
    5. If your answer to question 4 is "yes", what proportion of the negligence was attributable to the plaintiff, Michael Massaro? *No answer.*
    6. Did the stevedoring company, Northern Metal Company, through its agents in charge of the work, know or should have known that there was an unsafe condition existing at or near the ladder where it reached the lower tween deck? *No.*
    7. Did the stevedoring company, Northern Metal Company, carry on its duties in a place in which it was unsafe to work by reason of the condition existing on the ladder at the point where it reached the tween deck? *No.*

4. Reversed sub nom. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

swers to all the interrogatories with the exception of interrogatory 5 (which required no answer), were contrary to the evidence, the weight of the evidence and to the charge of the court. The sixth ground asserted that the trial judge erred by declining United's thirteenth point for a charge: i. e., that the stevedore's "warranty of workmanlike service 'may be breached when the stevedore's negligence does no more than call into play the vessel's unseaworthiness' ". The seventh ground consisted of a reservation to file additional reasons for a new trial when the notes of testimony had been transcribed and filed. On August 25, 1961, United filed an eighth reason for a new trial, asserting that the jury's award of damages was excessive.

On October 30, 1961, the court below filed an opinion, D.C., 198 F.Supp. 845, and denied all United's post-trial motions. The appeal followed.

## II

■■ Insofar as the original action is concerned, United asserts that it is entitled to a new trial for the reason that the jury's finding of no contributory negligence was against the weight of the evidence.[5] There was in our view, as there was in that of the trial court, sufficient evidence to support the jury's express finding, made in the negative answer to interrogatory No. 4, that Massaro was not contributorily negligent. Massaro was put in an exceedingly precarious position through no fault of his own. His view of the ledge was limited by the position of his arms while climbing the ladder. He had to act quickly for his own safety. He had to review in his mind's eye the position of the conex boxes and the narrow space available for his body on the coaming. It would have been difficult for Massaro to get off the ladder and onto the coaming without stepping on the piece of the paper which had settled there. We think that the jury was entitled to infer from all the evidence that in the limited time available and under the circumstances presented, Massaro did not act negligently.

■ United also insists that the court below erred in refusing its point No. 7 for charge. Assuming that the question is properly before us,[6] we find no merit in this contention. The charge was seemingly based upon the presumption that contributory negligence is a bar to recovery. It read as follows: "If you conclude from the evidence that the substantial cause of this accident was the negligent failure of the plaintiff to look where he was stepping on the coaming, so that he set his foot on a loose piece of paper without knowing it was there although he might have avoided falling if he had looked, you should find that the accident was brought about by his own negligence, and not by any unseaworthy condition of the ship, or by any negligence of its officers and crew." As we stated at an earlier point in this opinion the tort complained of was a maritime one. The requested charge would apply the doctrine of contributory negligence. Under the correct rule of law the principle of comparative negligence is applicable. See Palermo v. Luckenbach Steamship Co., 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed. 2d 3 (1957); Pope & Talbot v. Hawn, 346 U.S. 406, 408–409, 74 S.Ct. 202, 98

5. In so arguing, United cites numerous Pennsylvania authorities expounding the doctrine of contributory negligence as a matter of law. Of course, these state citations are inapposite regarding the question of Massaro's negligence; this case being concerned with a maritime tort, the federal maritime law is the applicable law. Pope & Talbot v. Hawn, 346 U.S. 406, 409–411, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

6. We entertain doubt as to whether this is a correct assumption. Although United took exception to the lower court's refusal to so charge, this denial was not asserted as error in the post-trial motions filed by United. The action of the court below on these motions is the only portion of the judgment from which appeal has been taken. See F.R. Civ.Proc. 73(b), 28 U.S.C.; Donovan v. Esso Shipping Co., 259 F.2d 65, 67–68 (3 Cir. 1958), cert. denied, 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572 (1959); Creedon v. Loring, 249 F.2d 714, 717, 718 (1 Cir. 1957).

L.Ed. 143 (1953). The charge properly was denied.

■ The eighth reason for a new trial, i. e., that the verdict was so excessive that it must be set aside, was raised after the period prescribed by Rule 59 (b), Fed.R.Civ.Proc. 28 U.S.C.A. and since there were no extraordinary reasons for the delay which could have justified the court below in considering the eighth ground under Rule 60(b), it could not sustain the motion. Russell v. Monongahela Ry., 262 F.2d 349, 354 (3 Cir. 1958).

### III

■■ We discuss now the contention of United that it is entitled to judgment as a matter of law against Northern Metal. United insists, as we have said, that the answers to interrogatories 6 and 7, addressed to the third-party action, must be set aside as contrary to the evidence and finding no support therein, and also as being in direct contradiction to findings 1 and 2. United sought, as we have said, judgment n. o. v. against Northern Metal. But United made no motion for a directed verdict under Rule 50(a). We therefore do not have the question of the sufficiency of the evidence before us. See Parenzan v. Iino Kaiun Kabushiki Kaisya, 251 F.2d 928, 930 (2 Cir.), cert. denied, International Terminal Operating Co. v. Iino, Kaiun, Kaisha Lmtd., 356 U.S. 939, 78 S.Ct. 781, 2 L.Ed.2d 814 (1958); Rotondo v. Isthmian Steamship Co., 243 F.2d 581, 582 (2 Cir.), cert. denied, 355 U.S. 834, 78 S.Ct. 53, 2 L.Ed.2d 45, (1957); and 5 Moore, Federal Practice, ¶ 50.05[1], pp. 2322–23. A motion for a directed verdict is a prerequisite of a motion for judg-

ment n. o. v. See Sears v. Pauly, 261 F.2d 304, 306–307 (1 Cir. 1958); Mutual Benefit Health & Accident Ass'n v. Thomas, 123 F.2d 353, 355 (8 Cir. 1941); and 5 Moore, Federal Practice, ¶ 50.08, pp. 2328–29.

■ We cannot deem United's request for charge No. 9 as affording it aid in its predicament. Request for charge No. 9 was as follows: "Under all of the evidence, your verdict in the third-party action must be in favor of the third-party plaintiff". Such a request does not meet the requirements of Rule 50(a) for the request in its terms is unspecific and was made at the beginning of the trial. It was waived when it was not renewed at the close of the evidence. The operative facts in the case at bar are almost on all fours with those of Budge Manufacturing Co. v. United States, 280 F.2d 414 (3 Cir. 1960), and our ruling in that case is dispositive of this issue here. We hold, therefore, that, after the adverse verdict rendered against it, United is not entitled to raise any issue as to insufficiency of the evidence. Nor, of course, can United be deemed to be entitled to judgment n. o. v.[7]

■ But even if the question were open we would be compelled to conclude that the evidence supports the verdict in favor of Northern Metal. It is fundamental that the evidence and the reasonable inferences to be drawn therefrom must be taken most favorably to the party who secured the verdict. Lavender v. Kurn, 327 U.S. 645, 652–653, 66 S.Ct. 740, 90 L.Ed. 916 (1946); Morris Bros. Lumber Co. v. Eakin, 262 F.2d 259, 263 (3 Cir. 1959). See also Dostal v. Baltimore & Ohio R.R., 189 F.2d 352, 355 (3 Cir. 1951).

7. United insists that the decision in Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798, contravenes the applicability of Rule 50, subparagraphs (a) and (b), stating that the points were discussed in oral argument before the Supreme Court. That Tribunal, however, as United itself points out, made no reference whatsoever to these issues. Nor does our decision in 3 Cir., Eisen-

berg v. Smith, 263 F.2d 827, cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959) support United's position.

United also contends that the provisions of Rule 50, subparagraphs (a) and (b) are not applicable where as here, under Rule 58 the trial judge has entered a judgment on special findings by the jury. United submits no authority for this proposition and we find United's argument lacking in validity.

The evidence, and the reasonable inferences therefrom, taken most favorably to Northern Metal, permit a reconciliation of the supposedly conflicting answers to interrogatories 1 and 2 on the one hand and answers 6 and 7 on the other hand. That evidence and the inferences to be drawn therefrom will support the following. Massaro was put in a dangerous position. He was stepping from the ladder to the 'tween-deck coaming when the accident occurred. He had his right foot on the ladder and was putting his left foot on the coaming when he stepped on the paper. The conex boxes had been placed too close to the coaming edge. They had been loaded prior to the ship reaching Philadelphia. Northern Metal had nothing to do with this stowage. Massaro, in exercising care in avoiding the boxes and in attempting to fit his body into the narrow space available, either could not or did not see the paper in the limited time available to him to act. In short, the jury could have concluded that the paper was the proximate cause of the accident. It is clear from the evidence that the jury could have concluded that the paper was blown into its dangerous position unknown to Northern Metal or its employees. The fact that the conex boxes were stored too close to the edge of the coaming could have been deemed by the jury not to have caused the accident. Answer 6 therefore can be reconciled with answers 1 and 2. Interrogatory 7 and answer 7 were both directed to "the condition existing on the ladder". This question was answered by the jury in the negative and properly so for upon analysis of all the evidence there is none which indicated that the ladder itself was in any way unsafe or unfit for the purpose for which it was to be used. We conclude therefore that there was no sound basis for United's assertion that the specified interrogatory answers were necessarily in conflict.

Accepting, as we must, the facts as found by the jury in answer to the special interrogatories, we find no basis for holding Northern Metal liable to indemnify United as a matter of law. See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 356–364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

Accordingly the judgment will be affirmed.