CARL BOWMAN SMITH AND MINNIE FAYE SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 11218-79.
United States Tax Court
T.C. Memo 1982-546; 1982 Tax Ct. Memo LEXIS 207; 44 T.C.M. (CCH) 1180; T.C.M. (RIA) 82546; September 21, 1982. *207 Petitioner-husband was an independent contractor producing counter tops. Held: (1) Petitioners did not use any portion of their house exclusively for business purposes and so may not deduct any of the expenditures for their house as trade or business expenses. Sec. 280A, I.R.C. 1954. (2) Deductible amount of telephone expenses is determined. (3) Petitioners have failed to show that their deductible transportation expenses exceed the amount allowed by respondent. (4) Petitioners have failed to show that their deductible materials expenses exceed the amount allowed by respondent. (5) Petitioners are allowed to deduct the cost of petitioner-husband's business license. (6) Other claimed deductions are not deductible. (7) Petitioners are not required to include in income the refund of State income taxes they received. See sec. 111, I.R.C. 1954. Carl Bowman Smith, pro se. Scott D. Anderson, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1977 in the amount of $2,598.88. [1] *208 The issues for decision are as follows: (1) Whether petitioners are entitled to deduct certain items as expenses of the petitioner-husband's trade or business as an independent contractor; and (2) Whether petitioners are required to include in income for 1977 the amount of a 1976 State income tax refund they received in 1977. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Carl Bowman Smith (hereinafter sometimes referred to as "Carl") and Minnie Faye Smith (hereinafter sometimes referred to as "Minnie"), husband and wife, resided in Chesapeake, Virginia. For some years, Carl was employed by Tidewater Kitchen Distributors, Inc. (hereinafter sometimes referred to as "Tidewater"), or its predecessor, Virginia Door Kitchen Distributors, Inc., to make counter tops. None of the deductions disputed in the instant case relates to Tidewater. At some time in 1977, Carl *209 left Tidewater and began to work for the Top Shop, a business owned by William Gary Whitehurst (hereinafter sometimes referred to as "Whitehurst"). Whitehurst supplied Carl with materials necessary to make counter tops and paid him $1.50 per foot for the counter tops he made. If Carl made any errors, then he had to pay for the materials used to repair or replace the counter tops. Carl made the Top Shop counter tops in Top Shop's facility in Norfolk, Virginia. Carl worked for Top Shop as an independent contractor and was paid $4,709.29 for this work in 1977. Carl was free to take additional jobs for himself during the periods he was employed by Tidewater and worked for Top Shop. He had a contractor's license from the City of Chesapeake permitting him to do such work. For this work, Carl received $1,077 in 1977. Throughout 1977, petitioners lived in a house they owned at 4012 Sloop Trail, in Chesapeake (hereinafter sometimes referred to as "the house"), which contained six rooms and one and one-half bathrooms. Throughout 1977, portions of the house also were used by Carl as an office and to display his counter top work to potential customers. On the first floor of the house there *210 was a kitchen-dining room combination, a living room, a utility room, and a half bathroom. On the second floor of the house there were three bedrooms and a full bathroom. Each of the two smallest bedrooms was furnished with a desk, a filing cabinet, and a telephone. These two bedrooms also had chairs, lamps, magazine racks, and a table for samples. The largest bedroom was furnished as a bedroom, i.e., with a bed, a chest of drawers, end tables, lamps, a dressing table, a mirror and "some stuff the wife put on the walls." Petitioners used each of the rooms in the house for personal purposes. They used the largest bedroom as a bedroom. They used the other rooms to prepare and eat meals, to entertain nonbusiness visitors, to wash and dry clothes, to relax, and generally for personal residential purposes. They also used the two smallest bedrooms for business filing and storage and they used the downstairs rooms to display Carl's counter top construction work to potential customers. Petitioners bought the house some time around 1970. Petitioners borrowed substantially all of the purchase price from the Virginia National Bank (hereinafter sometimes referred to as "the Bank"), to which *211 they gave a mortgage on the house. In 1977, petitioners paid $2,313.15 to the Bank for interest, principal, real estate taxes, and hazard insurance. Of this amount, at least $250 was for real estate taxes, at least $1,400 was for interest on the mortgage, and about $200 was for insurance. In 1977, petitioners paid $980.64 for electrical service, $162.51 for water and sewage service, and $90 for pest control service calls to the house. In 1977, petitioners paid $383.53 for telephone service to the house. Of this amount, $156.22 was for toll calls. At least $30 of petitioners' 1977 telephone service payments was paid for calls in the course of Carl's trade or business as an independent contractor. In 1977, Carl used two trucks and two automobiles in his work to some extent. All four vehicles were titled in his name. The monthly payments on one of the trucks (a 1973 Ford) were made by petitioners' son, who was the primary user of this truck. The monthly payments on the other truck (also a 1973 Ford) were made by Lawrence Ressler (hereinafter sometimes referred to as "Ressler"), another young man, who was the primary user of this other truck. Carl paid the insurance for both trucks *212 and paid about $10 per week for gasoline for each truck. Neither petitioners' son nor Ressler was involved in Carl's trade or business as an independent contractor. Carl usually drove one of the automobiles (a 1971 Pontiac) to get to his contracting jobsites, and also to get to his job at Tidewater. Minnie drove the other automobile (a 1976 Pontiac) for personal purposes and also to take samples of Carl's work to potential customers and to take potential customers to places where Carl's work could be shown. In 1977, petitioners made monthly payments totalling $1,648.80 to the People's Bank of Chesapeake on the automobile loan which they used to purchase the 1976 Pontiac. In 1977, Carl paid $247.94 for Virginia personal property tax on the vehicles he registered in Chesapeake and paid $87 to the Virginia Division of Motor Vehicles to register them. In 1977, petitioners paid at least $289.55 for automobile parts and service. In 1977, petitioners paid at least $401.48 for materials which Carl used in his trade or business as an independent contractor. In 1977, petitioners paid $67.35 to the City of Chesapeake for a license to operate Carl's trade or business as an independent contractor. *213 In 1977, petitioners paid $2,061.29 for medical expenses and insurance expenses. Of this total, $1,105.87 was paid for insurance on the vehicles titled in Carl's name (discussed supra), $121.28 was paid for life insurance, $174.12 was paid by Minnie to Maryview Hospital, $50 was paid to repair Carl's hearing aid, and $610.02 was paid for insurance of some kind. In 1976, Virginia State income tax was withheld from petitioners' compensation as indicated in table 1. Table 1 Employer
Employee
Amount
Tidewater's predecessor
Carl
$425.69
General Electric Company
Carl
102.48
Maryview Hospital
Minnie
82.99
Total
$611.16
Petitioners did not include Schedule A (Itemized Deductions) as part of their 1976 Federal tax return. Petitioners did include Schedule C (Profit or (Loss) From Business or Profession) on this return on which they deducted $10,952.57. They did not break down this amount among the various categories printed on the schedule nor did they describe any of the components on the 10 blank lines set aside for the purpose. In 1977, petitioners received a refund of a portion of their 1976 Virginia State income tax in the amount of $340.19; they did not include this amount in the income they reported *214 on their 1977 Federal tax return. In 1977, Virginia State income tax was withheld from petitioners' compensation as indicated in table 2. Table 2 Employer
Employee
Amount
Tidewater
Carl
$316.69
Maryview Hospital
Minnie
134.63
Total
$451.32
Petitioners did not include Schedule A (Itemized Deductions) as part of their 1977 Federal tax return. Petitioners did include Schedule C (Profit or (Loss) From Business or Profession) on this return on which they deducted $11,808.94. They did not break down this amount among the various categories printed on the schedule nor did they describe any of the components on the 15 blank lines set aside for this purpose. Petitioners did not deduct on their 1977 Federal tax return the Virginia State income taxes they paid in 1977. Petitioners did not deduct on their 1976 Federal tax return the Virginia State income taxes they paid in 1976. OPINION I. Business Expenses
As a preliminary matter, we note that petitioners' 1977 tax return shows as business expenses only the lump sum of $11,808.94. The tax return provides no breakdown or indication as to the nature of any of the claimed business expenses. Petitioners' 1977 tax return shows $15,124.77 of business *215 income, from which the $11,808.94 is deducted. However, $9,338.48 of the $15,124.77 was income from Tidewater, and Carl testified that none of the $11,808.94 of deductions related to his job at Tidewater. Petitioners, then, are claiming that Carl incurred $11,808.94 of deductible expenses in producing $5,786.29 at income. Notwithstanding the substantial amount of the claimed business expenses, petitioners apparently kept no business books. For convenience, we have attempted to analyze the apparent components of the claimed lump sum deduction by categories and we discuss the categories one by one. 1. Office in the Home
Petitioners maintain that they are entitled to deduct the following items as business expenses in connection with the house: "Payment on office or int." -- $2,304; pest control service -- $120; electrical service -- $980.91; and water and sewage service -- $162.51. On brief, petitioners concede that one-sixth of $4,158.78, [2] or $693.13, is not deductible. Respondent maintains that petitioners have failed to satisfy the "exclusively used" test of section 280A(c)(1) *216 [3] with respect to the house, and so are not entitled to their claimed deductions. We agree with respondent. Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". However, section 280A[4] *217 forbids allowance of deductions for expenses of business uses of the home unless the taxpayer surmounts certain hurdles. In structuring section 280A, the Congress laid down as a general rule a prohibition on deductions with respect to use of the taxpayer's residence (sec. 280A(a)), but provided a series of exceptions, each with its own exceptions and limitations. Section 280A(c)(1) provides an exception from the general prohibition in those situations where a business *218 use satisfies a series of requirements. The first of these requirements--the one that respondent relies on--is that the office be "exclusively used" for the required business purpose. Carl's testimony presents three different stories as to use of the house in 1977. His first story is that "I used this building from '77, the seventh month of that year, for that purpose until January '81, January '80, first of May, as an office. Since that day I have closed out as a business. Now that resident, 4012, becomes my residence. Until that time I used one room of that office for a place to sleep. You can call that home if you want to." His second story is that the house was used exclusively for business purposes during 1977, that he did not eat there, except for coffee, doughnuts, and similar snacks during workdays, and that there were no dishes, pots, pans, or eating utensils there during 1977. His third story is that he and Minnie moved into one of the bedrooms of the house in August 1977 and that before that time the house was used exclusively for business purposes. Our findings accept parts of the first and third stories; i.e., that petitioners used the house both as a residence *219 and for Carl's business throughout 1977. [5] As a result, all of the claimed deductions regarding the house are to be disallowed [6] (sec. 280A(a)) unless petitioners can satisfy the "exclusively used" requirement. Carl's testimony establishes that petitioners used all of the house for personal purposes in 1977. As a result, we conclude that no portion of the house was exclusively used by petitioners for business purposes and so petitioners fail to meet the requirements of paragraph (1) of section 280A(c). There is no suggestion that petitioners might have satisfied paragraph (2), (3), or (4) (relating to certain *220 storage use, rental use, or use in providing day care services, respectively) of section 280A(c), and so we conclude that petitioners have failed to take themselves out of the general rule of section 280A(a)--disallowance of deductions for business use of the home (see n. 4, supra). Petitioners appear to have a different view of the "exclusively used" test. As we understand it, their position is that they should be able to deduct their expenditures for the entire house except for that part of the house that is exclusively used for personal purposes--in the instant case, their bedroom. Unfortunately for petitioners, the law is otherwise. If a portion of the house is used for both business and nonbusiness purposes, then no business deduction is allowable for the expenses allocable to that portion of the house. In other words, "ties pay the dealer". [7]
We hold for respondent as to petitioners' business use of the house. [8]
2. *221 Telephone
Petitioners maintain that they are entitled to deduct $407.81 in telephone expenditures as business expenses. Respondent disallows the entire amount. Petitioners paid $383.53 for telephone service to the house. Petitioners have presented no evidence as to the additional $24.28 for which they claim a deduction. Carl acknowledged that more than two-thirds of the long-distance phone calls included in the telephone bills paid in 1977 were personal. Doing the best we can on the basis of the record in the instant case, weighing heavily against petitioners whose inexactitude is of their own making ( Cohan v. Commissioner,39 F.2d 540, 543-544 (CA2 1930)), we hold that petitioners are entitled to deduct $30 of telephone expenses as expenses of Carl's trade or business as an independent contractor. 3. Transportation
Petitioners maintain that they are entitled to deduct the following items as transportation business expenses: personal property tax on vehicles -- $247.94; "license, etc." -- $87; "truck payments" -- $1,648.80; gasoline -- $2,241.21; an unspecified amount for parts and service; and $1,105.87 for vehicle insurance. Respondent allows $918 (5,400 miles at 17 cents *222 per mile) as transportation expenses of Carl's trade or business as an independent contractor. We agree with respondent. The primary use of the trucks, by petitioners' son and Lawrence Ressler, was not part of Carl's trade or business. The primary use of the 1976 Pontiac, by Minnie, was not in Carl's trade or business. The 1971 Pontiac was used in part by Carl for going to his job at Tidewater. Compare Curphey v. Commissioner,73 T.C. 766, 778 (1980), on appeal (CA9 Nov. 24, 1980), with Mazzotta v. Commissioner,57 T.C. 427 (1971), affd. 465 F.2d 1399 (CA2 1972). The record in the instant case does not enable us to determine how much any of the vehicles was used in Carl's trade or business as an independent contractor, nor does it enable us to to make a meaningful estimate of the cost of such use. Petitioners have the burden of proving that their trade or business transportation expenses were more than the amount allowed by respondent. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. They have failed to carry this burden. [9] *223 We hold for respondent as to the transportation expenses. 4. Materials
Petitioners maintain that they are entitled to deduct $960.76 as the cost of materials used in Carl's trade or business. Respondent allows $401.48 of this amount as expenses of Carl's trade or business as an independent contractor. We agree with respondent. It is difficult to determine what items petitioners understood as coming within the $960.76 that they claim to be deductible as materials. Piecing together Carl's testimony and the exhibits, it appears that, among other things, petitioners included in this category items such as the following: $45.81 and $40.50 for shoes and other clothing that they concede on brief are not deductible; $15 to a medical doctor who specializes in otology, to treat Carl's left ear; a measuring tape that Carl said he did not use; miscellaneous items that Carl said must be for business purposes because he could not think of any item he might have *224 bought from Montgomery Ward that would have been for personal purposes; other items that Carl could not identify; $28.52 for a bake element for the stove at the house and $41.08 for a regulator exchange, both of which Carl conceded at trial probably were paid in 1976 and should not have been included in petitioners' 1977 deductions; and $15.39 for "congratulations flowers" sent to someone whom Carl could not remember. Petitioners' treatment of the items listed above as being deductible business expenses (whether or not materials expenses) cause us to have substantial doubts as to the value of Carl's vague testimony about a number of other items that otherwise might arguably be deductible business expenses. Petitioners have failed to carry their burden of proving that their deductible materials expense was more than the amount allowed by respondent. We hold for respondent as to the materials expense. 5. Business License
Petitioners maintain that they are entitled to deduct $67.35 they paid to the City of Chesapeake for a license to operate a business. Respondent asserts that this item is included in the $401.48 he allowed for materials and local business licenses. The trouble with *225 respondent's position is that the parties have stipulated that petitioners paid at least $401.48 for materials and have also stipulated that petitioners paid $67.35 for the license. We hold for petitioners as to the license as an expense of Carl's trade or business as an independent contractor. 6. Other Items
Petitioners maintain that they are entitled to deduct $2,061.29 as "Inc. all kinds as per checks rec." The parties have stipulated that the total is comprised of medical expenses and insurance expenses paid for by petitioners in 1977. Petitioners also claim a deduction of $93.90 for "License". Respondent disallows the entire amount. We agree with respondent. Of the total claimed, $1,105.87 is for premiums for insurance on the vehicles titled in Carl's name. This is dealt with under 3. Transportation,supra.
Further, $121.28 is for premiums for life insurance. At trial, Carl conceded that this amount is not deductible. On brief, petitioners do not indicate whether this item is conceded. We hold that the life insurance premiums are not deductible as trade or business expenses. A check for $174.12 to Maryview Hospital is dated January 18, 1977, is signed by Minnie, and has *226 a notation on it "Nov Dec & Jan Blue Cross". Another item is $50 to repair Carl's hearing aid. Petitioners have failed to show that these items, and also the $15 ear treatment expense that had been deducted by petitioners apparently as a materials expense, and a claimed expense of $231 for eyeglasses for Carl, are so business-related as to take them out of the category of "personal, living, or family expenses" which are not deductible as business expenses. [10] Compare Green v. Commissioner,74 T.C. 1229, 1235-1236 (1980), and Bakewell v. Commissioner,23 T.C. 803, 805 (1955), with Denny v. Commissioner,33 B.T.A. 738, 743 (1935). Four checks for $99.87 each (totalling $399.48) to insurance companies are described by Carl as being "for protection on getting hurt while on the other jobs, not in my shop, or damaging--we will say damaging the other party, but still I say I had a certain amount of insurance that was on me while there." The remaining $210.54 (of the $2,061.29 of other items) was paid to Top Shop, according to Carl, "for insurance that was carried on me and boys there. *227 If we got hurt in this job, I paid that to the Top Shop for him to carry the policy, and that come out of my contract." Petitioners have failed to carry their burden of proving that this insurance is of the sort such that the premiums would be deductible as an expense of Carl's trade or business as an independent contractor, rather than being deductible only as a medical expense (see n. 10, supra), or not being deductible at all. See Blaess v. Commissioner,28 T.C. 710 (1957); section 213(e)(2). Petitioners have presented no information as to the $93.90 license item. We hold for respondent as to these other items. II. State Tax Refund
Respondent maintains that petitioners deducted Virginia State income taxes on their 1976 Federal tax return, that in 1977 they received a refund of $340.19 of the amount so deducted, and that they are required to include this amount in income for 1977.Petitioners agree that they received the refund in 1977. However, they deny that they deducted Virginia State income taxes on their 1976 Federal tax return, and so they maintain that they are not required to include the refund in income for 1977. We agree with petitioners. Under section 111, [11] *228 petitioners' Virginia State income tax refund is not includible in 1977 income if their 1976 Federal income tax was not reduced by a deduction of this amount. On the face of petitioners' 1976 Federal *229 tax return it does not appear that they deducted Virginia State income taxes. Respondent states that petitioners may have hidden the item in the lump sum they deducted for 1976 as Carl's trade or business expenses, and for support he points to the miscellaneous nature of the corresponding lump sum petitioners deducted for 1977. We are distressed by the confusion petitioners have created because of the manner in which they claimed deductions and kept records any by their lack of books for Carl's trade or business. We agree with respondent that this properly gives rise to suspicions. However, after an examination fueled by such suspicions we conclude that petitioners have carried their burden of persuading us that it is more likely than not (see Popa v. Commissioner,73 T.C. 130, 135 (1979) (concurring opinion)) that petitioners did not deduct their 1976 Virginia State income taxes on their 1976 Federal tax return. Accordingly, we conclude that petitioners did not receive a tax benefit from their 1976 Virginia State income taxes and so are not required to include the refund in their 1977 income. We hold for petitioners on this issue. To reflect the foregoing, Decision will be entered *230 under Rule 155.
Footnotes
1. Of this amount, self-employment tax accounts for $352.88; the remainder is chapter 1 tax. Petitioners have not disputed liability for self-employment tax. However, the amount of the self-employment tax depends on our resolution of the issues for decision.
2. Petitioners have not enlightened us as to precisely what items comprise the $4,158.78 total they refer to.↩
3. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
4. Section 280A provides, in pertinent part, as follows: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) General Rule. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * *, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use. -- (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer. [,] (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. [The foregoing reflects an amendment enacted in 1981 (by sec. 113(c) of Pub. L. 97-119, 95 Stat. 1642), which applies to taxable years beginning after December 31, 1975.]↩
5. This is consistent with petitioners' concession on brief that one-sixth of their expenditures for the house are not deductible because they used one of the six rooms (the largest bedroom) as a bedroom. ↩
6. Our analysis focusses on petitioners' claimed deduction as a trade or business expense. Under section 280A(b)↩, petitioners are allowed to deduct their mortgage interest (sec. 163) and real property tax (sec. 164(a)(1)) payments "below the line", to the extent that these payments, when added to petitioners' other itemized deductions, exceed their zero bracket amount (sec. 63).
7. "Iolanthe", The Complete Plays of Gilbert and Sullivan, p. 277, The Modern Library, New York, New York.↩
8. We note that, even if we were to agree with petitioners' view that "ties pay the taxpayer", it may be that little or nothing would be deductible under section 280A(c)(5)↩.
9. To the extent not subsumed in respondent's allowance of $918 as a deduction, personal property tax (sec. 164(a)(2)), gasoline tax (sec. 164(a)(5), as it was before repeal by sec. 111(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2777), and interest on the 1976 Pontiac Payments (sec. 163) may be deductible. See n. 6, supra.↩
10. These items may be deductible as medical expenses under the limitations of section 213. See n. 6, supra.↩
11. Section 111 provides, in pertinent part, as follows. SEC. 111. RECOVERY OF BAD DEBTS, PRIOR TAXES, AND DELINQUENCY AMOUNTS.
(a) General Rule.--Gross income does not include income attributable to the recovery during the taxable year of a * * * prior tax * * * to the extent of the amount of the recovery exclusion with respect to such * * * tax * * *. (b) Definitions.--For purposes of subsection (a) -- (2) Prior Tax.--The term "prior tax" means a tax on account of which a deduction or credit was allowed for a prior taxable year. (4) Recovery Exclusion.--The term "recovery exclusion", with respect a * * * prior tax * * * means the amount, determined in accordance with regulations prescribed by the Secretary, of the deductions or credits allowed, on account of such * * * prior tax * * * which did not result in a reduction of the taxpayer's tax under this subtitle * * *, reduced by the amount excludable in previous taxable years with respect to such * * * tax * * * under this section.↩