**John H. LARY, Jr., and Sherry S. Lary, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 85–7519.

United States Court of Appeals, Eleventh Circuit.

April 29, 1986.

John H. Lary, Jr., and Sherry S. Lary, pro se.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., Glenn L. Archer, Asst. Atty. Gen., Michael Paup, Gilbert S. Rothenberg, Douglas G. Coulter, Tax Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

Before TJOFLAT and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

Dr. John Lary and Sherry Lary ("Taxpayers") appeal from a decision of the district court holding that the Commissioner of Internal Revenue ("Commissioner") properly disallowed certain deductions on their 1975 and 1976 tax returns. We affirm.

On their 1975 and 1976 joint tax returns, Taxpayers claimed, *inter alia*, deductions for (1) losses in 1975 and 1976 resulting from their investment in Village Green, Ltd., (2) automobile expenses incurred by Dr. Lary in commuting between his home and office in 1975 and 1976, and (3) the value of a pint of blood donated by Dr. Lary to the Red Cross in 1976. The Commissioner disallowed these deductions, and after paying the deficiencies asserted by the Commissioner, Taxpayers filed suit in district court for a refund. The district court held, *inter alia*, that (1) Taxpayers were not entitled to a theft loss deduction for their investment in Village Green, Ltd. because, assuming that such a loss had occurred, it was not discovered in either 1975 or 1976, (2) no deduction was available for Dr. Lary's travel between his house and his clinical office because the clinical office, not the home office, was his principal place of business, and (3) the Commissioner properly disallowed the deduction for the value of the donated blood because the donation of blood constitutes the performance of a service, which expressly does not qualify as a charitable contribution under the regulations. 608 F.Supp. 258 (N.D.Ala.1985).

Taxpayers argue on appeal that they are entitled to deduct the fair market value of the blood donated by Dr. Lary to the Red Cross. The district court, 608 F.Supp. at 263, held that the blood donation was the contribution of a personal service, and thus not deductible, *see* Rev.Rul. 162, 1953–2 C.B. 127, but Taxpayers argue that the donation of blood is the contribution of property rather than the performance of a service. We need not decide whether the donation of blood constitutes the performance of a service or the contribution of a product because Taxpayers cannot claim a charitable deduction under either interpretation.[1] If the donation of blood were the performance of a service, then Taxpayers are not entitled to a charitable deduction because the regulations expressly prohibit charitable deductions for the performance

---

1. We note that there is authority for both propositions. *Compare* Rev.Rul. 162, 1953–2 C.B. 127 (no charitable deduction for the value of donated blood, because the donation of blood constitutes the performance of a service), *with Green v. Commissioner,* 74 T.C. 1229, 1234 (1980) (for purpose of determining taxable income, sale of blood is the sale of a tangible product).

of services. *See* 26 C.F.R. § 1.170A–1(g) (1985).[2]

■ On the other hand, if the donation of blood were the contribution of a product, Taxpayers would still not be entitled to a charitable deduction. Section 170(e)(1)(A) of the Internal Revenue Code of 1954 provides that the amount of any charitable contribution of property shall be reduced by "the amount of gain which would not have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution)." I.R.C. § 170(e)(1)(A). In other words, if the property donated to charity would have resulted in ordinary income or short-term capital gain to the donor had the property instead been sold, the donor's charitable deduction would not include any amounts attributable to such gain, but rather would be limited to his adjusted basis in the property.

In the instant case, section 170(e)(1)(A)'s limitation on charitable contributions precludes any charitable deduction for the value of the donated blood. Taxpayers have proffered no evidence as to *any* basis in the donated blood or that the holding period for blood is more than six months,[3] which is the required holding period for a capital asset to qualify for long-term capital gain treatment, *see* I.R.C. § 1222(3) (West Supp.1985). Since Taxpayers have the burden of proof on both issues, *see Cates v. Commissioner,* 716 F.2d 1387, 1389 (11th Cir.1983) (taxpayer has burden of showing that he held capital asset for more than six months); *Better Beverages, Inc. v. United States,* 619 F.2d 424, 428 & n. 4 (5th Cir.1980) (taxpayer has burden of proof on question of basis in property),[4] and since Taxpayers have made no effort to shoulder that burden, we conclude that Taxpayers are not entitled to a charitable deduction under section 170(e)(1)(A).

■ Thus, our resolution of this case leaves open the question whether the sale or contribution of blood is the performance of a service or the sale or contribution of a product, as did the former Fifth Circuit in *United States v. Garber,* 607 F.2d 92 (5th Cir.1979) (en banc). However, we do resolve one question arguably left open in *Garber,*[5] i.e., that profit from the sale of blood does constitute income within the

---

2. 26 C.F.R. § 1.170A–1(g) provides:

   (g) *Contributions of services.* No deduction is allowable under section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible. For the purposes of this paragraph, the phrase "while away from home" has the same meaning as that phrase is used for purposes of section 162 and the regulations thereunder.

3. Red blood cells have an average finite life of approximately four months, and blood platelets have an average life of approximately ten days. *See* 2 *Encyclopedia Britannica* 1117–21 (15th ed. 1984).

4. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

5. It is not clear whether *Garber* assumed that such sale of blood did constitute income within the meaning of § 61, or whether that issue was left open. The court noted that experts for both parties conceded "that section 61(a)(3) includes in income only the profit gained through the sale ... of capital assets." 607 F.2d at 97. Then the court noted the uncertainty of the basis, and stated that it was unnecessary to decide what the law should be. The dissent recognized that the remand for retrial ordered by the *Garber* majority would have been unnecessary if the sale of blood did not give rise to taxable income. 607 F.2d at 101–02 (Ainsworth, J., dissenting). Regardless of whether the *Garber* court assumed that such income fell within § 61 and merely left open the tax consequences because of the basis uncertainty, or whether the court left the entire question open, the issue is presented in this case and we hold that the sale of blood gives rise to income within the meaning of § 61.

meaning of I.R.C. § 61. Our alternative holding with respect to section 170(e)(1)(A) necessarily presupposes gain "if the property contributed had been sold." Our research has uncovered only one case squarely resolving this issue. In *Green v. Commissioner*, 74 T.C. 1229, 1232–33 (1980), the Tax Court, noting the sweeping language of section 61 itself and the expansive interpretation accorded to that language by the Supreme Court, held that a taxpayer's sale of blood gave rise to income as defined in section 61. With respect to this issue, we agree with the holding and rationale of the Tax Court.

We have carefully considered Taxpayers' other claims, and conclude that they are without merit and warrant no discussion.

The judgment of the district court is therefore

AFFIRMED.