## WHITE'S WILL et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 7346.

Circuit Court of Appeals, Third Circuit.

Oct. 9, 1940.

Rehearing Denied May 2, 1941.

Oscar P. Mast, of Washington, D. C., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and John A. Gage, Sp. Assts. to Atty. Gen., for respondent.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The petitioners herein are the trustees under the will of Carl Hicks White. They appeal from a decision of the Board of Tax Appeals determining an income tax deficiency for the year 1935.

The testator died on March 20, 1933, a resident of New Jersey. He left an estate of almost one million dollars, consisting largely of intangibles although there were two parcels of real estate in Vermont. The will was admitted to probate in the City of New York and on January 7, 1935, pursuant to a decree of the Surrogate's Court, the executors delivered to the petitioners, as trustees, the residuary estate which then had a value of about three-quarters of a million dollars. The principal asset of the estate is approximately 8,500 shares of the capital stock of Health Products Corporation, a New Jersey corporation. The estate also owns all of the capital stock of Sunnyside, Inc., a Vermont corporation having its principal place of business at Bennington, Vermont.

Various paragraphs of the will set up trusts, gave specific legacies and made provisions for the use of the testator's real estate. There was an ambiguity among the directions contained in the several paragraphs. Therefore, shortly after the trustees qualified, a petition was filed by them in the Surrogate's Court of New York praying the "determination and advice of this Court as to the validity, construction, and effect of the disposition of property * * * of such will". All of the interested parties appeared and the court rendered a decree holding all of the trusts and bequests valid and directing that the expenses of the proceeding, totalling $11,-420.70, be paid from the principal of the estate. This sum included attorney's fees and costs of the trustees and also attorney's and guardian's fees and costs of certain legatees. It was paid by the trustees from income, although charged to the principal of the trust fund, on the ground that the immediate payment from the principal would have entailed a sacrifice of the assets.

The petitioners contend that they may take the costs of these proceedings as a deduction on the ground that they are engaged in a business as managers of this trust estate and that the cost of the proceedings was an ordinary and necessary expense incurred in the carrying on of that business. Revenue Act of 1934, c. 277, 48 Stat. 680, § 23(a), 26 U.S.C.A. Int.Rev.Code, § 23(a) (1). With certain exceptions not here involved, the act treats a trust estate as an individual taxpayer. 26 U.S.C.A. Int.Rev.Code, section 162; Treasury Regulations 86, Art. 162–1. The government argues that the management of this trust estate does not constitute a business and, even if it does, the cost of the litigation was not related to the business activity of the trust. The Board of Tax Appeals did not decide whether the trust was engaged in a business, but held that the proceeding to construe the will was not related to questions of management of the trust estate but involved only

distribution of assets among the various legatees.

We are confronted, therefore, with the question whether the trustees, in the management of this trust estate, are engaged in a business within the meaning of the Revenue Act. The language of the statute itself gives no definition which we may automatically apply to a set of facts and find from such application an authoritative answer. Nor has the Supreme Court of the United States given us a formula by which varying sets of facts may be resolved. In Deputy v. du Pont, 1940, 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416, Mr. Justice Frankfurter in a concurring opinion joined in by Mr. Justice Reed stated that " '* * * carrying on any trade or business', within the contemplation of § 23 (a), involves holding one's self out to others as engaged in the selling of goods or services". As will appear from the facts stated below the activities of these trustees fall far short of meeting such a test. In the absence of binding authority on the precise point the problem appears, like many others in the law, to be one the answer to which is being marked out by a process of inclusion and exclusion so frequently found where the courts deal with distinctions based on degree rather than kind.

In this case the activity of the trustees was found by the Board of Tax Appeals to be as follows, 40 B.T.A. 664, 668:

"The income of the trust amounts to about $60,000 per annum, of which the petitioners are required to invest and reinvest about $40,000 per annum. Up to the present time the investments made by the petitioners amount to approximately $200,-000, which are chiefly in stocks and bonds, although the petitioners have made some real estate loans in New Jersey. The petitioners are constantly selling and buying stocks and bonds and it is necessary for them to keep in constant communication with each other in this respect and to have investment counsel. The petitioners are required to do some things in connection with the trust almost every day and to make trips to New York and Washington several times during each year. Petitioners have also been required to make several trips to Bennington, Vermont, to attend to the matters of the estate there, including the properties of Sunnyside, Inc., all of the capital stock of which is owned by the trust. Petitioner Huston Thompson is president of Sunnyside, Inc. In connection with the properties located at Bennington, Vermont, the petitioners have been required to employ an attorney there to look after titles and to attend the meetings of the board and supervise generally the work of Sunnyside, Inc.

"The chief asset of the estate consists of approximately 8,500 shares of the stock of the Health Products Corporation, located at Newark, New Jersey. Petitioner Stephen H. Tallman is a member of the board of directors of this corporation and is required to attend its meetings, and both of the petitioners attend its stockholders' meetings and constantly get reports in that connection which are checked by them. Among the things the petitioners were required to do during the year 1935 in connection with the Health Products Corporation stock was to confer with the other heavy stockholders and decide the question of whether the stock should be put on the market, which one of the petitioners strenuously resisted. The interests of the petitioners in the stock of the Health Products Corporation require their constant attention.

"The petitioners are also required to give their attention to the memorial funds set up by the will of the decedent, requiring constant communication with the attorneys for the memorial funds to keep them advised as to investments, and petitioners make annual reports to those attorneys in this connection."

Do such activities constitute carrying on of a business? It seems now to be clear that the investing and reinvesting of assets, either by an individual for himself or by trustees on behalf of a trust estate, is pretty definitely determined not to constitute the carrying on of business. Thus Judge Learned Hand says in Bedell v. Commissioner, 2 Cir., 1929, 30 F.2d 622, 624: "Most men who have capital change their investments, and may speculate all the time; we should hardly call this a business, though the line is undoubtedly hard to draw." Judge Patterson in the same Circuit in Higgins v. Commissioner, 2 Cir., 1940, 111 F.2d 795, 796, says: "By the common speech of men, a person who does nothing beyond looking after his own investments and receiving the income from them is not conducting a trade or business." The same rule has been applied to the investing and reinvesting of a trustee on behalf of an estate. In City Bank Farmers Trust Co. v. Commissioner, 2 Cir., 1940,

112 F.2d 457, 458, it appeared that the duties of the trustee in a given trust consisted generally in causing its investment company to review each year its securities comprising the corpus; selling securities and reinvesting the proceeds in other stocks and bonds; collecting interest and dividends; paying expenses of the trust; distributing income to beneficiaries; keeping books of account; rendering statements to the interested parties for preparing and filing income tax returns. The court said: "We hold that in caring for the trust estate the trustee was like an individual engaged in investing his funds in stocks and bonds and that such a person cannot be regarded as engaged in business and, therefore, is not entitled to be allowed any deduction for expenses incurred in investing and supervising." To the same effect, see the clear and helpful discussion by the court in Miller v. Commissioner, 9 Cir., 1939, 102 F.2d 476 (also a trustee case) and Kane v. Commissioner, 2 Cir., 1938, 100 F.2d 382.

■ Kales v. Commissioner, 6 Cir., 1939, 101 F.2d 35, 39, 122 A.L.R. 211 seems to look the other way, although the court did not detail all the taxpayer's activities, but characterized them as "extensive, varied, continuous and regular". This decision was distinguished by the Ninth Circuit in the Miller case and differed with by the Second Circuit in Higgins v. Commissioner, supra. It seems to us clear that it is the consensus of judicial opinion, in which we concur, that the process of supervising the investment of one's own estate, or an estate in which one acts as trustee for another, with the incidental buying, selling, advising, etc., does not constitute the carrying on of business within the meaning of the Revenue Act.

The next question is whether the fact that the trustees are officers in corporations, shares in which are held by them as trustees for this estate, makes any difference. According to the facts found, one of the trustees is president of Sunnyside, Inc. All the capital stock of Sunnyside, Inc., is owned by the trustees. The other trustee is a member of the board of directors of the Health Products Corporation, 8,500 shares of whose stock is the chief asset of the estate. Each has had some activity, as the findings of fact show, because of his holding of the office of president or director, respectively. Does this additional fact throw the balance the other way and establish that the petitioners are engaged in business?

■ In Washburn v. Commissioner, 8 Cir., 1931, 51 F.2d 949, 953 the analogous question was presented. This case turned upon the section of the Revenue Act of 1921 providing that losses resulting from the operation of any business regularly carried on by the taxpayer might be carried over to the next taxable year. The taxpayer there was actively engaged in the management of a number of corporations in which he had large investments and it was held that he was engaged in carrying on a business and could carry over a loss from a sale of stock of one of the corporations which he had organized. The court said that the corporation, the sale of whose stock resulted in the loss, was "merely the alter ego" of the taxpayer. This seems to disregard the existence of the corporate entity which, of course, courts sometimes do when the ends of justice seem to require it. But the distinction between a corporation and the shareholder, even in the case of a corporation whose shares are wholly owned by one individual, is one which is kept pretty clear in judicial opinions. Mr. Justice McReynolds says in Dalton v. Bowers, 1932, 287 U.S. 404, 410, 53 S.Ct. 205, 207, 77 L.Ed. 389: "Certainly, under the general rule for tax purposes, a corporation is an entity distinct from its stockholders * * *." To the same effect see Burnet v. Clark, 1932, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Burnet v. Commonwealth Improvement Co., 1932, 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399. See, also, New Colonial Ice Co., Inc. v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Goldberg v. Commissioner, 1929, 59 App.D.C. 147, 36 F.2d 551; Nixon v. Lucas, 2 Cir., 1930, 42 F.2d 833. In McGinn v. Commissioner, 9 Cir., 1935, 76 F.2d 680, 99 A.L.R. 564, it was stated that the Washburn case was considered overruled and the same opinion has been expressed in this Circuit; Du Pont v. Deputy, D.C.Del.1938, 22 F.Supp. 589, 596. But see Foss v. Commissioner, 1 Cir., 1935, 75 F.2d 326.

It seems to us that the Washburn decision can hardly stand in view of the later pronouncements by the Supreme Court of the United States on the separation of the entity of the corporation from its officers and shareholders. Regardless of that point, however, we see nothing in the finding of

the facts in the instant case which make either of the corporations concerned in any sense "the alter ego" of the petitioners. Their activities, as shown in the facts, are far less both in amount and kind than that of the taxpayer in the Washburn case.

The remainder of the activities of the trustees seem to us to fall short of any possibility of supporting the conclusion that the activities on behalf of the trust constitute a business. While the facts state that the petitioners are required to do some things in connection with the trust almost every day, that would be equally true of an investor who is watching the stock market or an administrator of an estate of any decedent where the assets are relatively large.

■ The conclusion is that the petitioners, as trustees of the estate under the will of Carl Hicks White are not, in that capacity, engaged in a business and that the expense of the litigation to construe the will is not deductible. This conclusion makes it unnecessary for us to consider whether, if the trustees were engaged in a business, the expense could be considered an ordinary and necessary one.

A further question relates to the taxability of an item of $17,000 representing dividends received by the petitioners from Sunnyside, Inc. As has been pointed out, the entire capital stock of Sunnyside, Inc., was owned by the testator and then the trust estate. A field representative of the Bureau of Internal Revenue took the position in 1932 that Sunnyside, Inc., was not a separate entity for taxing purposes and that dividends which it received on its holdings in Health Products Corporation were taxable directly to the decedent or to the trust estate. During 1935, the taxable year here in issue, Sunnyside received $20,700 from Health Products and turned over $17,000 to petitioners. In 1938 the Commissioner demanded that returns be filed by Sunnyside, including the year 1935, and this was done. The petitioners now take the position that though they received the $17,000 from Sunnyside, this amount should not be considered a dividend to the trust estate, because the dividend was declared under pressure by the government, and it is unconscionable to exact a tax twice on the same income.

■ It is clear that they and Sunnyside are two separate tax entities and that each should pay a tax on the income it receives. While it may be true that to some extent a tax is being exacted twice on the same money (See Revenue Act of 1934, § 25(a), 26 U.S.C.A. Int.Rev.Acts, page 676) the same income is not being doubly taxed, for income under the revenue acts is gain derived by a specific taxpayer. A particular dollar is not invested with immunity from tax in the hands of B, simply because A has paid a tax on it. Therefore, the petitioners here are in no different position than any other shareholder who receives dividends from a corporation which has paid a tax on the earnings from which those dividends were derived. Such dividends were entitled under the Revenue Act of 1934, § 25(a), to be credited against net income for purposes of the normal tax, but not for the surtax. The petitioners received that credit.

The decision of the Board of Tax Appeals is therefore affirmed.