Louis **NOTO** and Ann Noto, Plaintiffs,

v.

**UNITED STATES, Defendant.**

**Civ. A. 83–3952.**

United States District Court,
D. New Jersey.

Sept. 21, 1984.

See also D.C. 598 F.Supp. 436.

Harvey R. Poe, Livingston, N.J., for plaintiffs.

Stephen T. Lyons, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

LACEY, District Judge.

There is only one issue left to be decided in this action:[1] whether the gambling activities of plaintiff Louis Noto[2] during 1978 constitute a "trade or business" within the meaning of Sections 62(1) and 162(a) of the Internal Revenue Code (the Code), 26 U.S.C. §§ 62(1) and 162(a).[3] Plaintiff says that they do and seeks to have his 1978 gambling losses treated as "above the line" deductions, deductible from gross income in arriving at adjusted gross income under Section 62(1). The Government maintains that the losses are not attributable to a trade or business, but are "items of tax preference," as the term is defined by Section 57(a)(1), and subject to minimum tax imposed by Section 56(a).[4] The facts have been stipulated.

During 1978, Louis Noto devoted approximately 60% of his waking time to his gambling activities. His exclusive domain was horse racing. On a daily basis, he went to one of several race tracks to study the horses and the track, review the racing programs, confer with horse owners and trainers, and place wagers on the races. He also videotaped races broadcast on television so that he could study the races even more closely. He recorded much of this data and used it in his self-devised system of handicapping to determine which wagers presented the most favorable odds.[5] At no time, however, did he accept bets on behalf of others or offer any consulting services to others or in any way hold himself out to others as providing a service. He bet solely for his own account, and, as a result of his efforts, he won over $97,000 at the tracks that year. Unfortunately, he lost more than he won, so on his 1978 tax return he deducted the losses to the extent of his gambling winnings, as is permitted under Section 165.

Upon auditing the 1978 return, the IRS determined that, while the gambling loss deduction was properly taken, it was an "item of tax preference" and was subject to minimum tax under Section 56(a). The IRS assessed a deficiency of $2,763, which was collected by reducing the amount of

---

1. The parties have submitted this action for final disposition by the court without a jury on the basis of their statement of stipulated facts. I adopt their stipulation as the findings of the court that are required by Fed.R.Civ.P. 52.

2. Ann Noto is a party to this action solely because she and her husband Louis filed a joint return. All references to the plaintiff are to Louis.

3. All section references are to the Internal Revenue Code as it was in effect in 1978. Relevant portions are appended to this memorandum.

4. For tax years beginning after 1982, the question whether gambling losses are attributable to the carrying on of a trade or business is no longer important for minimum tax purposes. Section 201 of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 411, revised the minimum tax of Section 56 to apply only to corporations. TEFRA further amended Section 55 to provide an "alternative minimum tax" on individuals that is similar to the Section 56 tax at issue here. However, under current law, deductions for gambling losses are specifically excluded from the Section 55 tax base.

5. Plaintiff describes his system as a combination of "trip handicapping" and "pathfinder handicapping." He explains that he "plays" the racetrack instead of the horse, on the theory that regardless of how fast a particular horse is, its chances of winning are substantially reduced if the path in which it is to run happens to be in poor condition that day. In order to properly evaluate the degree to which a horse is biased by the track, plaintiff relies on his notes on that horse's performance in prior races.

plaintiff's tax refund for 1982. Plaintiff filed a claim for the refund of the $2,763 on the ground that his gambling losses were "attributable to a trade or business carried on by the taxpayer" and, therefore, not within the definition of "items of tax preference" set forth in Section 57. This lawsuit was filed when the IRS denied the refund claim.

The term "trade or business" is not defined by either the Code or the Treasury Regulations. This responsibility has been left to the courts, and, not unexpectedly, there now exists a divergence of opinion as to what standard a court should employ in determining whether a taxpayer's activities constitute a trade or business.

One camp espouses what is known as the "facts and circumstances" test, derived from the Supreme Court decision in *Higgins v. Commissioner*, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941), where Justice Reed wrote, "[t]o determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." 312 U.S. at 217, 61 S.Ct. at 477. This test finds support in the United States Tax Court cases of *Ditunno v. Commissioner*, 80 T.C. 362 (1983) and *Groetzinger v. Commissioner*, 82 T.C. 793 (1984). While no single factor is controlling under this standard, consideration is generally given to the frequency and substantiality of the activities or transactions, as well as whether there is a genuine profit motive. *See, e.g., Ditunno*, 80 T.C. at 367. This is the theory urged upon the court by the plaintiff.

The test advanced by the Government is known as the "goods or services" test and has its origin in the concurring opinion of Justice Frankfurter in *Deputy v. du Pont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940), where he stated, "'... carrying on any trade or business,' within the contemplation of § 23(a) [the statutory predecessor to Section 162], involves holding one's self out to others as engaged in the selling of goods or services." 308 U.S. at 499, 60 S.Ct. at 369. The Government argues that, while the court must necessarily examine all the facts and circumstances of a taxpayer's activities, it must first find that the taxpayer holds himself out to others as providing goods or services before it can conclude that his activities constitute a trade or business. This standard was recently applied by the Second Circuit Court of Appeals in *Gajewski v. Commissioner*, 723 F.2d 1062 (2d Cir.1983), where it held that a full-time bookmaker was not engaged in a trade or business because he gambled solely for his own account. 723 F.2d at 1067. The court criticized the Tax Court's adoption of the "facts and circumstances" approach as a rule of law:

> The "facts and circumstances" approach does not describe a standard at all; it is instead a predicate for application of a legal test. One must first find the relevant "facts and circumstances" in every case before applying the proper standard to those facts. To describe "facts and circumstances" as a test is therefore to adopt a misnomer; the phrase amounts to a non-test. Once the facts and circumstances are ascertained there remains the problem of deciding upon a fair and reasonable standard for determining whether the taxpayer is engaged in a trade or business.

723 F.2d at 1066–67.

■ On the basis of the stipulated facts, it is clear that if the *duPont/Gajewski* "goods or services" test is applied here, then judgment must be entered in favor of the Government, for there is no dispute that plaintiff never held himself out to others as providing any sort of goods or services. My task is to divine the law in this circuit.[6]

The first time the Third Circuit faced the question after the Supreme Court decisions of *Deputy v. du Pont* and *Higgins* was in *Helvering v. Wilmington Trust Company*,

---

**6.** A district court is not bound by the appellate decisions outside its own circuit. *Cf. Massaro v. United States Lines Co.*, 198 F.Supp. 845, 848–49 (E.D.Pa.1961), *affirmed* 307 F.2d 299 (3d Cir. 1962).

124 F.2d 156 (3d Cir.1941),[7] where it was called upon to determine whether a taxpayer's personal investment activity in the stock market was a trade or business. The court expressed its preference for the "goods or services" formulation, reasoning that "[i]f carrying on a trade or business were taken to mean any activity for profit the deduction would be broader than intended." 124 F.2d at 158–59. The court considered the Supreme Court's opinion in *Higgins* and determined that the "facts and circumstances" approach did "not necessarily detract from the weight of Mr. Justice Frankfurter's conception [in *du Pont*]." The court reasoned that the Supreme Court's finding in *Higgins* that the taxpayer was not engaged in a trade or business under a "facts and circumstances" approach was not inconsistent with the earlier opinion of Justice Frankfurter in *du Pont* requiring that taxpayer hold himself out to others as providing goods or services.

The question came up again in *Commissioner v. Stoke's Estate*, 200 F.2d 637 (3d Cir.1953), where the court affirmed the Tax Court's finding that the taxpayer's activities in purchasing and exploiting patents constituted a "trade or business." 200 F.2d at 638. Although the sales transactions were largely between corporations in which the taxpayer held an interest, the court viewed the activities in locating, developing, and exploiting patents as involving "much more than the mere investment of funds in and management of corporations." *Id.* With respect to the frequency and substantiality of the activity, the court stated:

> It was quite clearly a personal activity in which a major portion of the [taxpayer's] lifetime[,] thought and energy was enlisted and in which he engaged continuously and regularly throughout his business career.

*Id.* at 638–39. The court applied the *Higgins* "facts and circumstances"[8] standard and concluded that the activities constituted a "trade or business." *Id.* at 639.

In *McDowell v. Ribicoff*, 292 F.2d 174, 178 (3d Cir.1961), *cert. denied* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961), the court applied the "goods or services" formulation in finding that a casual fiduciary's investment activities in the management of the decedent's estate did not amount to a trade or business. The court stated:

> The phrase "trade or business" must refer not merely to Acts [sic] engaged in for profit, but to extensive activity over a substantial period of time during which the *Taxpayer holds himself out as selling goods or services.* [Emphasis added].

292 F.2d at 178.

The latest Third Circuit case on this subject is *Commissioner v. Moffat*, 373 F.2d 844 (3d Cir.1967), where the court had to decide whether the taxpayer's activities in owning and leasing coal lands to a corporation constituted a trade or business. Without distinguishing or even citing to its earlier decision in *McDowell v. Ribicoff*, *supra*, the court stated the "facts and circumstances" formulation of *Higgins* and proceeded to examine the frequency and substantiality of the taxpayer's activities. Finding that the "taxpayer spent seventy-five per cent of his time on the coal lands" and that he "devoted most of his time to the business of leasing and operating coal properties," the court concluded that he was in a trade or business. 373 F.2d at 847.

---

**7.** In *White's Will v. Commissioner*, 119 F.2d 619, 621–22 (3d Cir.1940), the court followed the "goods or services" formula of *du Pont*. However, *White's Will* was decided before *Higgins*.

**8.** While it is evident that the court's holding was based primarily on the substantiality of the taxpayer's activities, it is not altogether clear what consideration the court may have also given to the fact that the transactions were between corporations in which the taxpayer held interest

and whether this was viewed as "holding one's self out to others." If this formed part of the basis for the court's holding, then its decision was overruled by the Supreme Court's decision in *Whipple v. Commissioner*, 373 U.S. 193, 203 n. 10, 83 S.Ct. 1168, 1174 n. 10, 10 L.Ed.2d 288 (1963), which held that a taxpayer who merely provides services for his own corporations to create future income through those enterprises is not in a trade or business.

Plaintiff argues that *Moffat* is inconsistent with and therefore overrules *McDowell*. He bases his argument on the absence in *Moffat* of any mention of a requirement that the taxpayer hold himself out to others as providing goods or services. He also infers, from the court's citation to *Higgins*, that it chose the "facts and circumstances" test over the "goods or services" test.

█ I give little weight to these contentions because I do not regard the two approaches as mutually exclusive. Common sense compels a district court to examine all the facts and circumstances of each case. Whether the taxpayer holds himself out to others as providing goods or services is just one of the facts or circumstances to be considered. Thus, the court's reference to "facts and circumstances" in *Moffat* should not be taken as a renunciation of its earlier statement in *McDowell*.

Moreover, I do not regard the court's failure in *Moffat* to discuss the "goods or services" requirement as significant because there is no dispute that the taxpayer was rendering services to others by leasing coal properties to third parties. Hence, the court's holding in *Moffat* is not inconsistent with the "goods or services" approach espoused in *McDowell*.

█ I conclude that *McDowell v. Ribicoff, supra*, is the controlling law.[9] In order to establish that he is in a trade or business, plaintiff would have to prove, at a minimum, that he "holds himself out as selling goods or services." *Supra*, 292 F.2d at 178. Since plaintiff has stipulated that he wagered solely for his own account, his gambling activity did not, as a matter of law, constitute a trade or business. Accordingly, judgment will be entered in favor of the Government.

### APPENDIX

### TEXT OF I.R.C. STATUTES

*I.R.C. Section 56(a): Imposition of Tax:*

(a) *General Rule.*—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of—

(1) $10,000, or

(2) the regular tax deduction for the taxable year (as determined under subsection (c)).

*I.R.C. Section 162(a): Trade or Business Expenses:*

(a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

*I.R.C. Section 62(a): Adjusted Gross Income Defined:*

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

(1) *Trade and business deductions.* —The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

---

9. While my conclusion is mandated by what I perceive to be the law in this circuit, it was not arrived at without reservations. I see no meaningful distinction between an "active trader" in securities and a gambler such as the plaintiff. Yet, in several circuits, including the Second, the stock market speculator is accorded "trade or business" status if his trading is frequent and substantial. *See, e.g., Fuld v. C.I.R.*, 139 F.2d 465, 468–69 (2d Cir.1943); *Purvis v. C.I.R.*, 530 F.2d 1332, 1334 (9th Cir.1976); *C.I.R. v. Nubar*, 185 F.2d 584, 589 (4th Cir.1950).

In *Gajewski v. C.I.R.*, 723 F.2d 1062, 1067 n. 8 (2d Cir.1983), the Second Circuit attempted to distinguish the "active trader" cases from the gambler cases on the basis that the former offers goods to others in the sense that he buys and sells securities. I fail to see how the purchase of a security is materially different from the purchase of a betting slip.

*I.R.C. Section 63(b): Taxable Income Defined:*

(b) *Individuals.*—For purposes of this subtitle, in the case of an individual, the term "taxable income" means adjusted gross income—

(1) reduced by the sum of—

(A) the excess itemized deductions, and

(B) the deductions for personal exemptions provided by Section 151, and

(2) increased (in the case of an individual for whom an unused zero bracket amount computation is provided by subsection (e)) by the unused zero bracket amount (if any).

*I.R.C. Section 165(d): Losses:*

(d) *Wagering Losses.*—Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.

*I.R.C. Section 57(a)(1) & (b)(1): Items of Tax Preference:*

(a) *In General.*—For purposes of this part, the items of tax preference are—

(1) *Adjusted Itemized Deductions.*—An amount equal to the adjusted itemized deductions for the taxable year (as determined under subsection (b)).

(b) *Adjusted Itemized Deductions.*—

(1) *In General.*—For purposes of paragraph (1) of subsection (a), the amount of the adjusted itemized deductions for any taxable year is the amount by which the sum of the deductions for the taxable year other than—

(A) deductions allowable in arriving at adjusted gross income,

(B) the deduction for person exemptions provided by Section 151,

(C) the deduction for medical, dental, etc., expenses provided by Section 213, and

(D) the deduction for casualty losses described in Section 165(c)(3),

exceeds 60 percent (but does not exceed 100 percent) of the taxpayer's adjusted gross income for the taxable year.

*I.R.C. Section 212: Expenses For Production of Income:*

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.